James D. DiPasquale     #11033
DIPASQUALE & SUMMERS, LLP
737 Bishop Street, Suite 1460
Honolulu, Hawaii 96813
Tel: (808) 240-4771
james@ds-lawoffices.com

*Attorneys for Plaintiffs Scarlet Honolulu, Inc. and Walter Enriquez*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| SCARLET HONOLULU, INC. and WALTER ENRIQUEZ d/b/a GAY ISLAND GUIDE,<br><br>Plaintiffs,<br><br>-against-<br><br>HONOLULU LIQUOR COMMISSION.<br><br>Defendant. | Civil No.: 1:21-cv-457-DKW-KJM<br><br>**PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**<br><br>Judge: Hon. Derrick K. Watson |

### PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Plaintiffs, Scarlet Honolulu, Inc., and Walter Enriquez ("Plaintiffs"), by and through their attorneys, DiPasquale & Summers, LLP, respectfully move pursuant to Rule 65(b) of the Federal Rules of Civil Procedure, for a Temporary Restraining Order and Order to Show Cause why a Preliminary Injunction Should Not Be Granted, halting all forms of witness intimidation, harassment and threats.

The Honolulu Liquor Commission ("HLC") has relentlessly and intensifyingly pursued a dangerous path of witness intimidation, culminating in a worrying death threat less than two weeks ago.



Sometime, on October 23, 2023, "Rob is Dead" was scrawled on a building located directly across the street from the Honolulu Liquor Commission's offices and parking structure. The menacing threat is presumably directed toward Robert Sobieralski, an important witness in this case, and the longtime life partner of Robert Baldwin, owner of Scarlet.

Neither the placement nor timing of this reprehensible tag is surprising. Robert Sobieralski has filed hundreds of UIPA requests with the HLC, the responses to

which have contributed significantly to the data presented in Plaintiffs' Opposition to Defendant's Motion for Summary Judgment. With each new UIPA request, the HLC compiles the requested documents and coordinates a pick-up time with Mr. Sobierlaski. He lives only a few blocks away and he is routinely observed passing by the doors which were used as the canvas for this threat. *See* Declaration of Robert Sobierlaski.

Additionally, Joseph Luna, also an owner of Scarlet, lives directly across the street from the HLC and he is frequently observed walking in the neighborhood by HLC employees. He also passes the location where the threat was scrawled on a nearly everyday basis while walking or driving to work at Scarlet. *See* Declaration of Joseph Luna.





The timing of this threat is also not an accident. Mr. Sobieralaki submitted three UIPA requests on October 15th, 18th, and 19th and was scheduled to retrieve the responses during the week of October 23, 2023. Moreover, Mr. Sobieralaki has consistently claimed throughout this case that the HLC was engaged in widespread wage theft. In late October, HPD's Criminal Investigation Division interviewed Mr. Sobieralaki after speaking with one or more HLC employees. The belief is that this threat emerged as a reaction to these events.

Joseph Luna discovered the death threat on October 23, 2023, and immediately filed a police report (Report #25447).

This is not the first attempt by the HLC to intimidate witnesses tied to this case.

*i.* *Initial Timeline of Events*

- On 7/16/21 HLC Investigators conducted the illegal and discriminatory inspection of Scarlet that would ultimately lead to the filing of the complaint in this case.

- On 7/18/21, Gay Island Guide ("GIG") published an article detailing the assault and discriminatory inspection of Scarlet.

- On 8/11/21, Scarlet filed a formal complaint with the Liquor Commission alleging bias against LGBTQ+ establishments.

- On 8/13/21, four HLC investigators inspected Scarlet, followed by an additional two on 8/14/21.

- Beginning in August 2021, both Scarlet and GIG began advertising a post Covid-19 event hosted by GIG at the White Sands Hotel on 10/23/21. Until recently, GIG has hosted regular weekend pool events at the White Sands Hotel.

- On 10/23/21 HLC Investigators shut down GIG's event at the White Sands Hotel, where GIG frequently held its events.

- On 11/23/21, Plaintiff's Federal Complaint was filed against the HLC.

*ii.* *Intimidation of Witness, Robert Sobieralaki by Temporary Restraining Order*.

- From October 2021 to December 2022, Robert Sobieralaki filed numerous of UIPA requests with the HLC, the records of which have been largely supplied to the court by way of exhibits in prior motions.

- On 12/22/22, Investigator Catherine Fontaine filed a Petition for Ex-Parte Temporary Retaining Order and for Injunction Against Harassment in the District Court for the First Circuit. In the Petition, she claimed that she felt harassed by the UIPA requests among other allegations.

- On 12/29/22, Catherine Fontaine emailed the HLC Administrator, Anna Hirai to advise her that the TRO had been issued and that Mr.

Sobieralaki was not permitted to come to the HLC to pick-up documents in response to his UIPA requests.

- In January 2023, several employees of the HLC, as well as Defendant's counsel, Lex Smith, coordinated efforts to arrange for service of the TRO and a deposition subpoena on Mr. Sobieralaki at his home.

- On 4/20/23 the TRO was dismissed.

iii. *Intimidation of Witness, Owner of the White Sands Hotel.*

- On 5/5/23, the Acting Administrator, Anna Hirai, reached out via email to the attorney representing the White Sands Hotel, indicating that the HLC was contemplating either non-renewal or conditional renewal of White Sand's liquor license, due to alleged noise complaints, all involving "weekend pool events."

- On 5/31/23, Ms. Hirai testified in this case and admitted that many of the complaints were from someone she deemed both "crazy" and a "chronic complainer".

- Nonetheless, on 7/13/23 the White Sands Hotel reluctantly agreed to several restrictions and conditions fearing that the HLC would not renew its license otherwise.

- As a result of the restrictions and conditions, the White Sands Hotel no longer hosts GIG events.

iv. *Intimidation of Witness(es), Scarlet Owners.*

- According to Jhmar Ray Waite, an Investigator with the HLC, he, along with two other investigators, were shown the locations of where Joseph Luna, Robert Baldwin and Robert Sobieralaki reside during drive-bys of their various residences.

## I. A PRELIMINARY INJUNCTION SHOULD ISSUE UNDER FED. R. CIV. P. 65

42 U.S. Code § 1985(2) creates a civil cause of action protecting the integrity of the administration of justice in both federal and state courts:

> "If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws."

This motion arises under the first clause of the statute, protecting "any party or witness in any court of the United States" from conspiracies to "deter, by force, intimidation, or threat" that person from "attending such court," or from "testifying to any matter pending therein, freely, fully, and truthfully," or "to injure such party or witness in his person or property on account of his having so attended or testified." *Id.* The United States Supreme Court has construed the intended scope of the statute broadly, holding that "[t]he gist of the wrong at which § 1985(2) is directed is . . .intimidation or retaliation against witnesses in federal-court proceedings." Haddle v. Garrison, 525

U.S. 121, 125, 119 S.Ct. 489, 142 L.Ed.2d 502 (1998); *see also* Head v. Wilkie, 936 F.3d 1007 (9th Cir. 2019)(abrogating prior Ninth Circuit caselaw insofar as inconsistent with Haddle). Thus, liability arises if a witness is deterred from participating fully, or is retaliated against for having done so.

This Court has described the standards that apply to a motion for a preliminary injunction as follows:

> "[I]njunctive relief is an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 129 S. Ct. 365, 376, 172 L. Ed. 2d 249 (2008). The standard for granting a preliminary injunction and the standard for granting a temporary restraining order are identical. See Haw. Cnty. Green Party v. Clinton, 980 F. Supp. 1160, 1164 (D. Haw. 1997); Fed. R. Civ. P. 65.

Sakala v. BAC Home Loans Servicing, LP, CV. No. 10–00578 DAE–LEK, 2011 WL 719482, at *4 (D. Hawai`i Feb. 22, 2011) (alteration in original).

> A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest. Am. Trucking Ass'ns v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting Winter v. Natural Res. Def. Council, Inc.,555 U.S. 7, 129 S. Ct. 365, 374, 172 L. Ed. 2d 249 (2008)) (explaining that, "[t]o the extent that [the Ninth Circuit's] cases have suggested a lesser standard, they are no longer controlling, or even viable" (footnote omitted)).

Pac. Radiation Oncology, LLC v. Queen's Med. Ctr., 47 F. Supp. 3d 1069, 1075-76 (D. Hawai`i 2014) (alterations in Pac. Radiation) (some citations omitted). When the government is a party, the last two factors, balance of equities and public interest,

merge. Drakes Bay Oyster Co. v. Jewell, 747 F.3d 1073, 1092 (9th Cir. 2014).

      **a.**      **Plaintiff Has a Substantial Likelihood of Success on the Merits.**

To issue the relief sought herein, the Court must find that the Plaintiff is substantially likely to succeed on its claim that the Honolulu Liquor Commission has engaged in "(1) a conspiracy between two or more persons, (2) to deter a witness by force, intimidation or threat from attending court or testifying freely in any pending matter, which (3) results in injury to the plaintiff." Head, 936 F.3d at 1010. When the basis of the claim is retaliation, "a plaintiff must prove four elements: (1) a conspiracy by the defendants; (2) to injure a party or witness in his or her person or property; (3) because he or she attended federal court or testified in any matter pending in federal court; (4) resulting in injury or damages to the plaintiff." Portman v. County of Santa Clara, 995 F.2d 898, 908 (9th Cir. 1993).

Since the filing of this lawsuit, three individuals (Robert Sobeiralski, Robert Baldwin, and Joseph Luna) and two business entities (White Sands Hotel and Gay Island Guide), all key witnesses in this federal action, have suffered threats and intimidation, which has culminated in an explicit death threat. This pattern of behavior is not only unlawful but also threatens the integrity of these legal proceedings and the safety of those involved.

      **Wrongful conduct**: To date, Plaintiffs have identified at least four instances of

overt intimidating acts targeting these witnesses. Three have involved the known participation of at least two persons who are employees or agents of the Honolulu Liquor Commission: seasoned HLC investigators, including Jacob Fears and Catherine Fontaine, repeatedly identifying the personal residences of Sobieralski, Baldwin, and Luna to new investigators in training; coordinated activities seeking to prevent Sobieralski from exercising his legal rights to access public information about HLC operations (Administrator Anna Hirai, Catherine Fontaine, and attorney Lex Smith); and concerted action harming the business interests of both White Sands and Gay Island Guide (Administrator Anna Hirai). While a single person would be capable of painting the death threat "Rob is Dead"—the most egregious of these intimidating acts--adjacent to the HLC offices, it is not essential that more than one individual engage in acts in furtherance of a conspiracy, so long as the individual who performed the act did so with the support of others. *See* <u>Vietnamese Fisherman's Association v. Knights of the Ku Klux Klan</u>, 518 F. Supp. 993 (S.D. Tex. 1981). Taken together, these facts establish "plausible grounds to infer an agreement" (or agreements) among HLC personnel, <u>Kendall v. Visa U.S.A., Inc</u>., 518 F.3d 1042, 1047 (9th Cir. 2008), *quoting* <u>Bell Atlantic Corp. v. Twombley</u>, 550 U.S. 544, 556-57, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007) which can be further developed through discovery.

**Wrongful purpose**: These acts serve no legitimate purpose. There is no legitimate purpose served by HLC investigators repeatedly identifying the locations of

the personal homes of three primary witnesses to this lawsuit, other than to mark them, with a nod, as suitable targets for harassment. No other citizens, lawyers or journalists are subjected to spurious injunctions prohibiting them from seeking out public records related to a federal case, other than witness Robert Sobieralski. White Sands, a licensed venue that already suffered a wrongful shut-down when it hosted a Gay Island Guide event in 2021, has had their license limited based on complaints deemed baseless by the HLC acting administrator herself; Gay Island Guide can no longer sponsor LGBTQ-friendly events at that location as a result. And a death threat can have no other purpose but to frighten and to silence.

What these threats and acts of retaliation have in common is the people they hurt, and to what purpose. The people they hurt are citizens and community businesses seeking to pursue their legal rights in federal court. Their case challenges the legality and fairness of many aspects of the HLC's operations, including actions and decisions by some HLC officials named in this motion. This lawsuit may have caused embarrassment and pain to the organization and people who work there. But this discomfort can be no justification for public servants to attempt to oppress those who present their issues before a federal court for resolution, which the facts here indicate is the purpose of this harmful conduct. Moreover, although the witness intimidation provisions of §1985(2) do not require proof of invidious class-based animus, Kush v. Reynolds, 460 U.S. 719, 103 S.Ct. 1483, 75 L.Ed2d 413 (1983)(unlike §1985(3)

claims, *see* Griffin v. Breckenridge, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971)), each of the individuals subject to intimidation is a gay man, Gay Island Guide addresses the interests and concerns of LGBTQ Hawaiians and visitors, and White Sands' current license restrictions, as already mentioned, prohibits them hosting LGBTQ-friendly events at their venue under the conditions of their restricted license. This pattern suggests that the HLC is continuing, even escalating, the discriminatory conduct plaintiffs have alleged in their §1983 claims, now in an effort to derail that case altogether by targeting the plaintiffs' witnesses.

**Injury**: Each of these witnesses has already suffered substantial injury due to HLC's harassment and retaliation. Robert Sobieralski, the apparent target of the "Rob is Dead" tag, has relocated out of state and has no intent to return to Hawai'i. The parties rights to access to public documents relevant to their federal lawsuit has been chilled. Witnesses Robert Baldwin and Joseph Luna are also concerned for their personal safety, and for the well-being of their staff and customers. White Sands, as already mentioned, has had to agree to a restriction on their license, harming their economic interests as well as their reputation as an LGBTQ-friendly venue. Gay Island Guide has lost an important business collaboration with White Sands, also resulting in economic loss to GIG and prejudice to its mission of serving Hawai'i's LGBTQ residents and visitors through community gatherings and events. These harms are sufficient to establish cognizable injury under §1985(2), whether or not they rise to the

level of protected due process deprivations. In Haddle, the Supreme Court made clear that traditional tort principles define the dimensions of compensable injury under the statute, not the constitutional standard. *See* Haddle, at 525 U.S. at 127; *see also* Head, 936 F.3d at 1012.

**Entity issues**: In the circumstances alleged, the court may properly find that concerted acts by Honolulu Liquor Commission officials, staff, and its agents can constitute a §1985(2) conspiracy, regardless of the fact that they are members of the same organization. A §1985 claim alleging conspiracy among officials of a single organization is proper when numerous and varied acts by several persons within that organization are committed against the plaintiff, and such actions do not constitute a single corporate act. *See e.g.*, An-Ti Chai v. Michigan Technical University, 493 F. Supp. 1137, 1166-67 (W.D. Mich. 1980); *see also* Note, Intracorporate Conspiracies Under 42 USC §1985(c), 92 Harvard L. Rev. 470 (1978). In addition, the liability of the HLC under the principles of Monell v. Department of Social Services has been addressed in full elsewhere; to the extent those principles apply in the context of §1985(2), Plaintiffs' arguments pertinent to the HLC's failure to train or promulgate protective policies are relevant here.

 **b.**  **Plaintiffs Will Suffer Irreparable Injury if Injunctive Relief is Not Granted.**

The phrase, "Rob Is Dead" is stark and unambiguous. The threat is real, specific,

and direct. Failing to acknowledge this threat as legitimate would be a grave mistake. It is clear that such a threat has the potential to create genuine fear and disrupt the lives of those involved. The severity and immediacy of the message cannot be ignored or downplayed. This is a serious matter that requires immediate attention and action to ensure the safety and well-being of all parties involved. If injunctive relief is not granted, the plaintiffs will undoubtedly suffer irreparable harm, both in the form of psychological trauma and a potential physical threat. This factor weighs in favor of granting Plaintiffs' Motion.

    c.    **Balance of the Equities and Public Interest**

The balance of equities and public interest clearly favor the plaintiff. The public interest in preventing harm to a person and ensuring justice is paramount. It is in the public's best interest to maintain the integrity of legal proceedings and protect individuals from intimidation and threats, especially when these actions could potentially influence the outcome of a legal case. Therefore, the Court must weigh these factors when considering the plaintiffs' motion.

**V.**    **CONCLUSION**

Based on the foregoing, Plaintiffs respectfully request that this Honorable Court grant their Motion for a Temporary Restraining Order and Order to Show Cause why a Preliminary Injunction should not be entered. The evidence presented herein clearly

demonstrates that Plaintiffs and their witnesses have been subjected to egregious acts of intimidation and harassment that not only compromise the integrity of the judicial process but also endanger their personal safety and well-being. Immediate and decisive action is necessary to prevent further irreparable harm.

Therefore, it is imperative that the Court issue an order to protect the Plaintiffs, their owners, employees, agents, and all potential witnesses associated with this case. Such an order should unequivocally prohibit any form of harassment, intimidation, or threats by the Defendant or any person acting in concert with or on behalf of the Defendant.

Dated: Honolulu, HI
November 9, 2023

Respectfully submitted,

DIPASQUALE & SUMMERS, LLP
Attorneys for Plaintiff

By: */s/ James D. DiPasquale*

James D. DiPasquale (Atty. #11033