James D. DiPasquale, 011033
DiPasquale & Summers, LLP
737 Bishop Street, Suite 1460
Honolulu, Hawaii 96813
Tel: (808) 240-4771
james@ds-lawoffices.com

*Attorneys for Plaintiffs Scarlet Honolulu, Inc. and Walter Enriquez*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| SCARLET HONOLULU, INC. and WALTER ENRIQUEZ d/b/a GAY ISLAND GUIDE, <br><br> Plaintiffs, <br><br> -against- <br><br> HONOLULU LIQUOR COMMISSION, <br><br> Defendant. | Civil No.: 1:21-CV-00457-MWJS-KJM <br><br> **PLAINTIFFS SCARLET HONOLULU, INC.; WALTER ENRIQUEZ D/B/A/GAY ISLAND GUIDE, LLC TRIAL BRIEF** |

## PLAINTIFFS SCARLET HONOLULU, INC.; WALTER ENRIQUEZ D/B/A/GAY ISLAND GUIDE, LLC TRIAL BRIEF

# TABLE OF CONTENTS

Table of Authorities……………………………….……………………..…….…i

I.     Introduction……………………….…………………………………..……. 1

II.    Disputed Issues of Law…………………………………………….………2

A.  Violation of the Equal Protection Clause:   Defendant HLC's discriminatory inspections and patrols violated Plaintiffs' right to equal protection**. **………...  .  . 2

   1.   Defendant HLC created a discriminatory classification based on sexual orientation with a discriminatory purpose……….….………….….………………3

   (a)  HLC inspection and patrol activities had a discriminatory impact on similarly situated LGBTQ+ licensees. …………………………………………..3
   (i)     LGBTQ+ licensees are similarly situated to all other HLC licensees, as well as other licensees in comparable categories………………………..4
   (ii)    Plaintiffs' data showing discriminatory impact are admissible and probative……………………………………………………………5

   (b) Defendant HLC targeted LGBTQ+ licensees for inspection and patrol with invidious intent toward sexual minorities……………………………………8

   2.  Defendant HLC's conduct is not justified under the intermediate scrutiny test appliable in cases of sexual orientation discrimination……………………………10

B. Violation of Procedural Due Process:  Plaintiff GIG's Procedural Due Process rights were violated by Defendant HLC, causing cognizable injury. . . . . . . .……11

C. Defendant   HLC   is   liable   for   the   constitutional   wrongs   suffered   by Plaintiffs…………………………………...……………………………...………12

   1.  Defendant HLC's custom or practice of targeting LGBTQ+ licensees for regulatory enforcement was a moving force behind the constitutional violations suffered by Plaintiffs. …………………………………….……..12
   2.  Defendant HLC's policy of inadequate training reflected deliberate indifference to Plaintiff's constitutional rights and was a moving force behind the constitutional violations suffered by Plaintiffs…..…..………………13

D. Defendant HLC violated Haw. Rev. Stat. §489-3 by denying LGBTQ+ customers the full and equal enjoyment of Plaintiffs services……………………………..16

E. Defendant HLC breached its duty of care owed to Plaintiffs under state law by its negligent retention and training of HLC employees…………..……………17

F. Plaintiffs are entitled to remedies including compensatory damages, lost profits, statutory remedies, nominal damages, injunctive relief, and reasonable attorney's fees, for claims on which they prevail…………………………………………….19

1. Plaintiffs, if prevailing in claims arising under 42 U.S.C. §1983, Haw. Rev. Stat. §489-3, or negligent hiring or retention may be awarded compensatory damages for the injuries caused by Defendant's wrongdoing………………20

2. Plaintiffs, if prevailing in claims arising under 42 U.S.C. §1983, Haw. Rev. Stat. §489-3, or negligent hiring or retention, will request recovery of lost profits sustained as a result of Defendant's discriminatory acts……………21
   (a.)  Plaintiff Scarlet's lost profits due to Defendant's wrongdoing are not speculative and were caused by Defendant's wrongdoing…………...21
   (b.)  Defendant HLC did not affirmatively plead mitigation of damages as a defense, and has not produced evidence that such mitigation was possible………………………………………………..……………21

3. Plaintiffs, if prevailing in claims for violations of Haw. Rev. Stat. §489-3, will request statutory remedies pursuant to Haw. Rev. Stat. §489-7.5…………...22

4. Plaintiff GIG, if prevailing in its procedural due process claim arising under 42 U.S.C. §1983, will request nominal damages for that claim……………22

5. Plaintiffs, if prevailing in any claim, will request permanent injunctive relief to prevent future injuries for which a remedy at law is inadequate…………22

6. Plaintiffs, if prevailing on constitutional claims arising under 42 U.S.C. §1983 and/or statutory claim arising under Haw. Rev. Stat. §489-3, will request reasonable attorney's fees as authorized by law……………………………23
   (a.)  Plaintiffs will request recovery of all attorney's fees and costs pursuant to 42 U.S.C. §1988 to which they may be entitled…………………..23
   (b.)  Plaintiffs will request recovery of all attorney's fees and costs pursuant to HRS §489-7.5 to which they may be entitled……………………..24

# TABLE OF AUTHORITIES

**Cases**

Abraham v. S.E. Onorato Garages,
    446 P.2d 821 (Haw. 1968)……………………………………………… 19

Arizona Dream Act Coalition v. Brewer,
    757 F.3d 1053 (2014)………………………………………………..4

Avenue 6E Investors, LLC v. City of Yuma,
    818 F.3d 493, 504 (9th Cir. 2016)……………………………………… 10

Awakuni v. Awana,
    15 P.3d 1027, 1046 (Haw. 2007)……………………………………… 18

Ballou v. McElvain,
    29 F.4th 413(9th Cir. 2022)……………………………………………… 8

Bazemore v. Friday,
    478 U.S. 385 (1986)………………………………………………………7

Board of County Commissioners v. Brown,
    520 U.S. 397 (1997)…………………………………………… 14, 15

Carey v. Piphus,
    435 U.S. 247 (1978)……………………………………………12, 22

City of Canton v. Harris,
    489 U.S. 378, 389, 392 (1989)……………………………………..14

City of Cleburne v. Cleburne Living Center,
    473 U.S. 432 (1985)………………………………………………….4

Coral Construction co. v. King County,
    941 F.2d 910 (9th Cir. 1981)………………………………………….7

eBay, Inc. v. MercExchange,
    547 U.S. 388 (2006)……………………………………………….. 23

EEOC v. General Telephone Co. of Northwest, Inc.,

885 F.2d 575, 580 (9th Cir. 1989)……………………………………………… 7

Epileptic Foundation v. City and County of Maui,
300 F. Supp.2d 1003 (D. Haw. 2003)………………………………………… 17

Flores v. City and County of Honolulu,
2019 U.S. Dist. LEXIS 194183 (D. Haw. 2019)………………………………19

Freeman v. City of Santa Ana,
68 F.3d 1180 (9th Cir. 1995)…………………………………………………….4

Garcia ex re. Marin v. Clovis Unified School District,
627 F. Supp.2d 1187 (E.D. Cal. 2009)…………………………………… 19

Gillette v. Delmore,
979 F.2d 1342 (9th Cir. 1992)……..…………………………………….. 13

Guatay Christian Fellowship v. County of San Diego,
670 F.3d 957, 983 (9th Cir. 2011)……………………………………….. 11

Harris v. City of Riverside,
904 F.2d 497, 501 (9th Cir. 1990)……………………………………….. 11

Hazelwood School District v. United States,
433 U.S. 299 (1977)………………………………………………………7

Howard v. Hertz Corp.,
2016 U.S. Dist. LEXIS 8439 (D. Haw. 2016)…………………………...…19-20

Hyun Ju Park v. City and County of Honolulu,
292 F. Supp. 3d 1010 (D. Haw. 2018)………………………………………...19

Iddings v. Mee-Lee,
919 P.2d 263 (Haw. 1996)……………………………………………………17

In re AS,
312 P.2d 1193, 1220 (Haw. App. 2013)……………………………………….17

International Brotherhood of Teamsters v. United States,
431 U.S. 324, 339 (1977)……………………………………………………… 6

Janssen v. American Hawaiian Cruises, Inc.,

731 P.2d 163, 166 (Haw. 1987)…………………………………………………..18

Jett v. Dallas Independent School District,
    491 U.S. 701, 737 (1989)…………………………………………………...13

Kalima v. State,
    468 P.3d 143 (Haw. 2020)…………………………………………………… 22

Lee v. City of Los Angeles,
    250 F.3d 668 (9th Cir. 2001)…………………………………………………10

Lyons v. England,
    307 F.3d 1092 (9th Cir. 2002)………………………………………………16

Mathews v. Eldridge,
    424 U.S. 319 (1976)………………………………………………………...11

Memphis Community School District v. Stachura,
    477 U.S. 299 (1986)………………………………………………………...21

Merritt v. County. of Los Angeles,
    875 F.2d 765, 770 (9th Cir. 1989)…………………………………………..14

Monell v. Department of Social Services,
    436 U.S. 658 (1978)………………………………………………………...12

Murphy v. Lovin,
    284 P.3d 918, 928 (Haw. App. 2011)………………………………………18

Obrey v. Johnson,
    400 F.3d 691 (9th Cir. 2005)…………………………………………………7

Otani v. City and County of Hawai`i,
    126 F. Supp.2d 1299 (D. Haw. 1998) aff'd sub nom., Otani v. Hawai`i City
    Police Department, 246 F.3d 675 (9th Cir. 2000)………………………19, 20

Personnel Administrator of Massachusetts v. Feeney,
    442 U.S. 256 (1979)………………………………………………………...10

Powers v. Ohio,

499 U.S. 400 (1991)…………………………………………………………...17

Rodriguez v. County of Los Angeles,
      891 F.3d 776 (9th Cir. 2018)…………………………………………………12

Rosenbaum v. City and County of San Francisco,
      484 F.3d 1142 (9th Cir. 2007)………………………………………………3

Ryder v. Booth,
      2016 U.S. Dist. LEXIS 62534 (D. Haw. 2016)……………………………..19

SmithKline Beecham Corp. v. Abbott Laboratories,
      740 F.3d 471 (9th Cir. 2014)………………………………………………3, 11

State v. Hoshijo,
      76 P.3d 550 (Haw. 2003)……………………………………………………16

Tandon v. Newsom,
      593 U.S. 61 (2021)………... …………………………………………….. 4

 Taylor v. San Diego County,
      800 F.3d 1164, 1169 (9th Cir. 2015)………………………………………4

Thornton v. City of St. Helens,
      425 F.3d 1158 (9th Cir. 2005) ……………………………………………… 4

Village of Arlington Heights v. Metropolitan Housing Development Corporation,
      429 U.S. 252, 266 (1977)…………………………………………   8, 10

Washington v. Davis,
      426 U.S. 229, 242 (1976)……………………………………………………3

Wayte v. United States,
      470 U.S. 598 (1985)………………………………………………………9-10

Western Pacific Electric Company Corp. v. Dragados/Flatiron,
      534 F. Supp. 3d 1209 (E.D. Cal. 2021)…………………………………… 21

Vargas v. City and County of Honolulu,
      2020 U.S. Dist. LEXIS 114315 (D. Haw. 2020)……………………………19

Yick Wo v. Hopkins,

118 U.S. 356 (1886)……………………………………………………………3

**Statutes:**

28 U.S.C. §1331……………………………………………………………... 2

28 U.S.C. §1367…………………………………………………………. 2

42 U.S.C. §1983……………………………………………….. 2, 20, 22, 23, 24

42 U.S.C. §1988(b)………………………………………………… 24

Haw. Rev. Stat.§1-19………………………………………………….. 17

Haw. Rev. Stat. §489.2…………………………………………………….17

Haw. Rev. Stat. §489.3…………………………………… 16, 17, 20, 22, 23, 24

Haw. Rev. Stat. §489-7.5………………………………… … 17, 20, 22, 23, 24

**Other Authorities:**

Fed. R. Evid. 401……………………………………………………………15

Fed. R. Evid. 402……………………………………………………… 9, 15

Fed. R. Evid. 404(a)(1)……………………………………………………9

Fed. R. Evid. 404(b)(2) ……………………………………………………9

## PLAINTIFFS SCARLET HONOLULU, INC.; WALTER ENRIQUEZ D/B/A/GAY ISLAND GUIDE, LLC TRIAL BRIEF

Plaintiffs submit this trial brief pursuant to this Court's Third Amended Rule 16 Scheduling Order, Dkt. No. 136 at p. 4 ¶ 20, directing the parties to serve and file a trial brief on all significant disputed issues of law.

## INTRODUCTION

Plaintiffs Scarlet Honolulu, Inc. ("Scarlet") and Walter Enriquez d/b/a Gay Island Guide ("GIG") are, respectively, a Honolulu nightclub and an on-line media source. GIG also sponsors events and gatherings at various venues. For LGBTQ+ residents and visitors, though, they are much more than that. Scarlet and GIG create community: a place of connection, belonging, safety and pride for vulnerable people. Legacies of oppression and epidemic illness are among the many reasons for that vulnerability. Historically, government raids of "gay bars" were a common, and frightening, tactic deployed to suppress and punish sexual minorities. And the lethal impact of a fast-spreading virus, with no known preventative or cure, shapes the collective memory of gay men in particular. Having secure venues like Plaintiff Scarlet where the LGBTQ+ community can openly gather--and having access to news and information that people need to seek out those venues like GIG provides--are part of what it means to exercise equal rights as an LGBTQ+ person. And

respecting the acute health concerns of a group of people whose numbers were decimated in the AIDS crisis is part of what it means to care for them.

In this case, Plaintiffs allege and intend to prove that the Defendant Honolulu Liquor Commission ("HLC") exercised its powers against both Plaintiffs in a manner that violated their constitutional rights to equal protection, and GIG's right to procedural due process, giving rise to this action under 42 U.S.C. §1983, as well as state public accommodations law and tort duties of care.  The HLC did this by, *inter alia*, inspecting, surveilling, and targeting Plaintiffs' venues causing discriminatory impact and with invidious purpose, shutting down a GIG event for pretextual reasons, and failing to exercise due care in the training and supervision of its Enforcement Section.  These actions led to Scarlet's closure for substantial periods, GIG's loss of business opportunities, as well as other injuries.    Plaintiffs seek injunctive relief as well as monetary damages.  Jurisdiction lies in the Court pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1367.

## I.    DISPUTED ISSUES OF LAW

## A.    Violation of the Equal Protection Clause:    Defendant HLC's discriminatory inspections and patrols violated Plaintiffs' right to equal protection.

Plaintiffs have alleged and will prove at trial that Defendant HLC discriminated against them based on sexual orientation, in violation of their rights to Equal Protection.  Businesses have the right to be free from discriminatory or selective

2

enforcement of otherwise valid business regulations.  Yick Wo v. Hopkins, 118 U.S. 356, 367 (1886) (striking down a municipal practice of denying operating permits to Chinese laundry operators because of their race).  Further, discrimination based on sexual orientation is subject to heightened scrutiny under an intermediate standard of review.  SmithKline Beecham Corp. v. Abbott Laboratories, 740 F.3d 471, 480-81 (9th Cir. 2014).

**1. Defendants created a discriminatory classification based on sexual orientation with a discriminatory purpose.**

 Hawai`i liquor laws and regulations authorize agency enforcement personnel to inspect businesses holding liquor licenses to monitor compliance with the conditions and terms of their licenses.  These statutes and regulations are neutral on their face; that is, they do not in terms differentiate between LGBTQ+ license holders and others.  When a government regulation is neutral on its face, an equal protection plaintiff must show both that the disputed government action had a discriminatory impact and was motivated by a discriminatory purpose. Washington v. Davis, 426 U.S. 229, 242 (1976), Village of Arlington Heights v. Metropolitan Housing Development Corporation, 429 U.S. 252, 266 (1977), and Rosenbaum v. City and County of San Francisco, 484 F.3d 1142 (9th Cir. 2007); *see also* Dkt. No. 132 (Summary Judgment Order) at 17-18.

**(a) HLC inspection and patrol activities had a discriminatory impact on similarly situated LGBTQ+ licensees.**

**(i) LGBTQ+ licensees are similarly situated to all other HLC licensees, as well as other licensees in comparable categories.**

Plaintiffs will prove that HLC inspectors, throughout 2020 and 2021, subjected LGBTQ+ licensees to inspections and patrols at rates drastically higher than similarity situated non-LGBTQ+ licensees.  At the outset, Plaintiffs must show that the licensees to which the LGBTQ+ licensees are being compared are "similarly situated" for purposed of this analysis.  The "threshold inquiry in an Equal Protection case is whether the plaintiff and the proposed comparator are similarly situated, since the Equal Protection Clause requires that 'persons similarly situated . . . be treated alike.'"  <u>City of Cleburne v. Cleburne Living Center</u>, 473 U.S. 432, 439 (1985); *see also* <u>Thornton v. City of St. Helens</u>, 425 F.3d 1158, 1167 (9th Cir. 2005); <u>Freeman v. City of Santa Ana</u>, 68 F.3d 1180, 1187 (9th Cir. 1995).  The referent that defines which licensees are "similar" to the Plaintiffs and other LGBTQ+ licensees on this analysis is the government interest in the activity in question.   *See* <u>Taylor v. San Diego County</u>, 800 F.3d 1164, 1169 (9th Cir. 2015); <u>Arizona Dream Act Coalition v. Brewer</u>, 757 F.3d 1053 (2014).  As the U.S. Supreme Court put the point recently in a free exercise of religion case, "whether two activities are comparable. . .must be judged against the asserted government interest that justifies the regulation at issue." <u>Tandon v. Newsom</u>, 141 S.Ct. 1294, 1296 (2021) (*per curiam*).

The HLC has the responsibility to ensure the compliance of all licensees to regulatory norms established by statute and rule.   Neither statute nor HLC regulations create different inspection frequency rates for different classes of licensees, whether for different opening hours, locations, risk factors, or other priority considerations.  Nor does the agency have policies or inspection assignment practices that differentiate among or prioritize/deprioritize licensees for inspection or patrol attention.   Enforcement staff themselves describe their selection of licensees for inspection as "random."  The government interest in inspections and patrols, then, as evidenced by both formal, enacted policy and in-practice implementation is to inspect all licensees equivalently and with an even hand.

Since all HLC licensees are similarly situated to each other with respect to this interest, LGBTQ+ licensees and non-LGBTQ+ licensees should subject to the same rates of inspection and patrol attention as "similarly situated" entities.  Plaintiffs' inspection and patrol data, showing these comparisons, demonstrate that LGBTQ+ licensees have been over-inspected, and over-surveilled by HLC patrols, for years, compared to non-LGBTQ+ licensees.  Further, Plaintiffs will demonstrate additional disparities between licensees in other comparable categories, strengthening their showing of discriminatory impact by these data as well.

**(ii) Plaintiffs' data showing discriminatory impact are admissible and probative.**

Plaintiffs' evidence of these discriminatory practices is both admissible and highly probative.  Plaintiffs amassed HLC's own inspection and "patrol" records, for 2020-2021 as well as prior years, and logged the frequency of inspections and/or patrols at LGBTQ+ licensees, individually and as a group.  The frequency of inspections and/or patrols at other, non-LGBTQ+ licensees were also entered, both in aggregate and within other comparator categories—like location and business type.  Based on these aggregate, subgroup, and individual totals, Plaintiffs calculated average inspection/patrol rates for LGBTQ+ licensees and non-LGBTQ+ licensees within each category, adjusting for opening hours, and temporary/permanent closure periods.  These calculations reveal consistent, substantial disparities in inspection and patrol rates—subjecting LGBTQ+ licensees to highly disproportionate, intrusive enforcement scrutiny compared to other licensees.  This evidence clearly demonstrates that the Defendants created an impermissible classification having a discriminatory impact on LGBTQ+ licensees, including Plaintiff Scarlet Honolulu.

"[O]ur cases make it unmistakably clear that 'statistical analyses have served and will continue to serve and important role' in cases in which the existence of discrimination is a disputed issue." International Brotherhood of Teamsters v. United States, 431 U.S. 324, 339 (1977).   Moreover, there is no "one size fits all" rule mandating particular statistical method, sample size, or manner of presentation of data for all cases and contexts.  *Id*. at 340 (noting that "statistics come in infinite

variety").  In <u>Teamsters</u>, the Supreme Court held that gross statistical disparities between the racial composition the IBT workforce and the general population was probative of racial discrimination under Title VII, *id*. at 339; *see also* <u>Hazelwood School Dist. v. United States</u>, 433 U.S. 299, 307-8 (1977)(gross statistical disparities may in a proper case establish prima facie proof of discrimination); <u>Coral Construction Co. v. King County</u>, 941 F.2d 910, 918 (9th Cir. 1991)(same). Consequently, objections to probative value of such proof generally goes to its "weight, not the admissibility of the statistical evidence." <u>Obrey v. Johnson</u>, 400 F.3d 691 (9th Cir. 2005); *see also* <u>Bazemore v. Friday</u>, 478 U.S. 385, 400 (1986)(in the context of a Title VII suit, "[a] plaintiff . . . need not prove discrimination with scientific certainty," data that omits some variables is not for that reason non-probative).  Moreover, a defendant must do more to rebut a plaintiff's evidence of discrimination than "merely pointing to flaws in the plaintiff's statistics," and must present evidence that the statistics are defective and how that flaw biases the results. <u>EEOC v. General Telephone Co. of Northwest, Inc</u>., 885 F.2d 575, 580 (9th Cir. 1989).

Moreover, Plaintiffs will also introduce direct evidence of discriminatory impact; specifically, testimony regarding the aggressive entry by HLC investigators into Plaintiff Scarlets' venue on July 16, 2021, and retaliatory inspection of Plaintiff GIG's LGBTQ+ event at the White Sands Hotel on October 23, 2021.  These events,

in addition to Plaintiffs' extensive documentation showing that the HLC inspected and patrolled LGBTQ+ licensees at rates multiple times higher than other licenses, will substantiate that Defendant HLC's actions had a discriminatory, wrongful impact on LGBTQ+ licensees.

**(b) Defendant HLC targeted LGBTQ+ licensees for inspection and patrol motivated by invidious intent toward sexual minorities.**

Plaintiffs will offer testimony and other evidence showing discriminatory intent. Relevant evidence of intent may include the historical background of the discriminatory decisions, the events leading up to them, departures from the norm in connection with the discriminatory action, relevant administrative history, and other factors that contribute to a "sensitive inquiry into such circumstantial and direct evidence of intent as may be available," to prove discriminatory purpose. <u>Arlington Heights</u>, 429 U.S. at 266 (setting forth non-exclusive examples, including those listed here, of the kinds of proof that may be relevant to proving invidious intent); *see also* <u>Ballou v. McElvain</u>, 29 F.4th 413 (9th Cir. 2022). Plaintiffs will present testimony from Mr. Jhumar Ray Waite, a gay man and former HLC investigator, detailing the homophobic culture rife within the HLC, including belittling homophobic comments and retaliation directed against him by at least two HLC investigators also involved in excessive inspections of Plaintiffs, as well as the Acting HLC Administrator Anna Hirai. Waite will also testify to directions given to him by HLC leadership not to disclose these incidents to an outside audit

interviewer.  Plaintiffs will also present evidence that previous complaints of anti-gay and anti-transgender conduct by HLC investigators were ignored and the behavior of offending HLC staff unaddressed; social media "tracking" of Scarlet's and GIG's websites by HLC investigators Fontaine show inordinate and unexplained attention to Plaintiff Scarlet's operations and activities.

In addition, Plaintiffs intend to present social media material, photos and prior litigation information probative of anti-LGBTQ+ bias on the part of HLC investigators Kruse, Rangel, and Fontaine.  Defendant has challenged the relevance of these items under Fed. R. Evid. 402, and as inadmissible character evidence under Fed. R. Evid. 404(a)(1).  However, the social media posts and photos depict an HLC investigator wearing Nazi garb in one instance, and feature belittling and sarcastic comments by a recently separated HLC investigator made to a transgender social media poster in another. The prior litigation involved a lawsuit filed by investigator Fontaine against a lesbian supervisor alleging emotional distress; the supervisor believed Fontaine's action was motivated by anti-lesbian bias.  This evidence is relevant to anti-LGBTQ+ bias; each of these HLC investigators were involved in the over-inspection and patrolling of LGBTQ+ licensees.   Further, such evidence is admissible under Fed. R. Evid. 404(b)(2) as probative of motive and intent.

Plaintiffs' need only show that the challenged course of action was pursued "at least in part 'because of'. . .its adverse effect upon an identifiable group." Wayte v.

United States, 470 U.S. 598, 610 (1985), *quoting* Personnel Administrator of Massachusetts v. Feeney, 442 U.S. 256, 279 (1979), *compare* Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001).   The intent to discriminate need not be the sole basis, or even the dominant or primary one, for the official action to fall afoul of constitutional mandates.   See Arlington Heights, 429 U.S. at 265; Avenue 6E Investors, LLC v. City of Yuma, 818 F.3d 493, 504 (9th Cir. 2016).  Plaintiffs have clearly met and exceeded this standard. The pattern and intensity of enforcement against LGBTQ+ licensees city-wide, the over-patrolling of areas where LGBTQ+ licenses were located, the history of bigotry directed by HLC investigators against Scarlet in particular, aggressive and retaliatory incidents instigated by HLC investigators at Scarlet and at the White Sands GIG event, all support a finding that Defendant's action had a discriminatory impact on LGBTQ+ licensees, perpetrated with discriminatory intent in violation of Plaintiffs' 14th Amendment rights.

**2. Defendant HLC's conduct is not justified under the intermediate scrutiny test applicable in cases of sexual orientation discrimination.**

Defendants have suggested at different stages of this litigation that its inspection and patrol activities are driven by citizen complaints, and that HLC's responses to those complaints explain and justify its investigators' choices of licensees to inspect. It could be that Defendants assert this contention as an "intermediate scrutiny" justification, if they are found to have created a discriminatory sexual orientation classification. *See* SmithKline Beecham Corp, *supra.*

If defendants were to assert this justification at trial, the evidence does not support it.  Even assuming that prioritizing citizen complaints is an important government objective, there is no evidence to show that targeting LGBTQ+ licensees was "substantially related to the achievement of [that] objective[]." SmithKline Beecham Corp., 740 F.3d at 480-81.  Plaintiffs have examined and documented all citizen complaints received during 2020 and 2021; there is simply no relationship between the licensees receiving complaints, and the fact or frequency of inspections by the HLC during any timeframe.  Plaintiffs' evidence will show that any suggestion by the HLC that inspections were complaint-driven is mere pretext.

**B.    Violation of Procedural Due Process: Defendant HLC violated GIG's Procedural Due Process rights, causing cognizable injury.**

The parties appear agreed that a plaintiff is deprived of procedural due process on a plaintiff's showing of the existence of "'(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process.'"  Guatay Christian Fellowship v. County of San Diego, 670 F.3d 957, 983 (9th Cir. 2011) (quoting Harris v. City of Riverside, 904 F.2d 497, 501 (9th Cor. 1990); see also Mathews v. Eldridge, 424 U.S. 319 (1976).  Plaintiffs will show that Plaintiff GIG had a protected property interest in an undisturbed LGBTQ+ event hosted by GIG at the White Sands Hotel on October 23, 2021, that GIG was deprived of its protected interest when HLC investigators summarily shut

down its event early, and that the reasons given for this shut-down were baseless and pretextual.  GIG suffered both actual and nominal damages as a result of Defendant HLCs violation of its rights; the Plaintiff is entitled to nominal damages even if no compensable actual damages are proven.  Cary v. Piphus, 435 U.S. 247, 266-67 (1978).

**C.      Defendant Honolulu Liquor Commission is liable for the constitutional wrongs suffered by Plaintiffs.**

Plaintiffs will offer evidence at trial showing that Defendant HLC is liable for these constitutional violations under Monell v. Department of Social Services, 436 U.S. 658 (1978), based on two grounds, as articulated in Rodriguez v. County of Los Angeles, 891 F.3d 776 (9th Cir. 2018):

> *First,* a local government may be liable if execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicted the injury.  *Second*, a local government can fail to train employees in a manner that amounts to deliberate indifference to a constitutional right, such that the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonable be said to have been deliberately indifferent to the need.

*Id*. at 802-03.

**1. The HLC's custom or practice of targeting LGBTQ+ licensees for regulatory enforcement was a moving force behind the constitutional violations suffered by Plaintiffs.**

A municipal agency may be held liable for execution of a custom or informal policy of LGBTQ+ discrimination, evidenced by repeated constitutional violations,

for which the errant municipal officials were not discharged or reprimanded.  *See* Gillette v. Delmore, 979 F.2d 1342, 1346, *see also* Jett v. Dallas Independent School District, 491 U.S. 701, 737 (1989) (the practice constitutes the entity's "standard operating procedure").  The evidence Plaintiff's will produce at trial will prove that the HLC persistently targeted LGBTQ+ businesses for discriminatory regulatory enforcement over a two-year period in 2020-2021 and violated the constitutional rights of both Scarlet and GIG in particular in 2020 and 2021.  Further, HLC took no remedial action in response to complaints of LGBTQ+ animus lodged by Plaintiff Scarlet and former HLC investigator Jhumar Ray Waite.  In Scarlet's case, the HLC retaliated against the business with repeated, baseless inspections, a perfunctory investigation, and inaction.  In Mr. Waite's case, HLC placed Mr. Waite, and not the alleged perpetrators, on administrative leave following his report of persistent sexual orientation discrimination and harassment.  HLC then took affirmative steps to block Mr. Waite from providing information about these incidents to an outside auditor charged with evaluating HLC systems.  This pattern of repeated constitutional violations, which resulted in no agency discipline or correction, constitutes an informal policy amounting to "standard operating procedure" oat the HLC.  Jett, 491 U.S. at 737.

    **2. Defendant HLC's policy of inadequate training reflected deliberate indifference to Plaintiff's constitutional rights and was a moving force behind the constitutional violations suffered by Plaintiffs.**

A municipality may also be liable under Monell if a plaintiff shows: "(1) an inadequate training program, (2) deliberate indifference on the part of the [municipality] in adequately training its law enforcement officers, and (3) [that] the inadequate training actually caused a deprivation of [a plaintiff's] constitutional rights." Merritt v. County. of Los Angeles, 875 F.2d 765, 770 (9th Cir. 1989); City of Canton v. Harris, 489 U.S. 378, 389, 392 (1989) (entity may be liable if it failed to train its employees in such a way that "reflects a 'deliberate' or 'conscious' choice by [the] municipality"). The municipality's deliberate indifference may be shown through a "pattern of tortious conduct by inadequately trained employees" or where "a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." Board of County Commissioners v. Brown, 520 U.S. 397, 407–09 (1997).

Plaintiffs will present evidence at trial that the training that HLC investigators received was shockingly meager, disorganized, largely self-directed with little or no oversight by senior personnel and put new investigators on the job in the community with no competency testing of any kind. Employees received no cultural competency training to facilitate positive, effective interactions with diverse populations, including LGBTQ+ licensees and venues. Plaintiffs will further show HLC's deliberate indifference to the inadequate training of its employees by evidence that the HLC has been aware of a "pattern of tortious conduct" toward the

community as a whole, and toward LGBTQ+ businesses and people in particular, for over 20 years, and has failed to respond.[1]  The HLC's utter failure to equip its employees with even minimal tools to do their jobs produced a workforce where "violation of federal rights" was not only "a highly predictable consequence," Brown, 520 U.S. at 409, but a virtual certainty, as borne out by the constitutional violations at issue here.

The evidence that Plaintiffs will present as probative of Defendant's deliberate indifference includes records of criminal convictions by prior HLC investigators, specific instances of LGBTQ+ harassment by HLC investigators that occurred prior to the statutory limitations period, as well as audit reports and investigations of HLC operations spanning an 18-year period reporting significant deficiencies in policies, training, oversight, and investigation practices.  This evidence is relevant to the issue of the HLC's deliberate indifference to the inadequate training of its staff, its long-term awareness of patterns of tortious misconduct and the need for concerted organizational responses to these issues.  This evidence is therefore admissible and probative under Fed. R. Evid. 401 and 402.  *See* Lyons v. England, 307 F.3d 1092 (9th Cir. 2002)(evidence of discriminatory acts committed by the defendant prior to

---

[1] Judge Watson, in his summary judgment order, observed that "there is evidence that HLC leaders were not only deliberately indifferent to the need for better training, but affirmatively perpetuated a culture of discriminatory behavior." Dkt. 132 at 30.

the limitations period may constitute relevant background evidence of intentional

discrimination).

**D.     Defendant HLC violated Haw. Rev. Stat. §489-3 by denying LGBTQ+ customers the full and equal enjoyment of Plaintiffs services.**

Defendant HLC is also in violation of Hawai`i's public accommodation law,

Haw. Rev. Stat. §489-3, which prohibits:

> Unfair discriminatory practices that deny, or attempt to deny, a person the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation on the basis of . . . sexual orientation. . .

*Id.*  In <u>State v. Hoshijo</u>, 76 P.3d 550 (Haw. 2003), the Hawai`i Supreme Court

affirmed the liability of defendant University of Hawai`i for discriminatory practices

under HRS §489-3.  The discrimination charged was the utterance of a racial slur by

a UH basketball coach during a game, directed at an attendee.  The coach called the

attendee the offensive name twice, in a single confrontation.  The discriminatory

practices Plaintiffs will seek to prove in this case, violating equal protection and due

process guarantees as well as HRS §489-3, far exceed in number, duration, and

persons impacted even the egregious conduct establishing liability in <u>Hoshijo</u>, and

satisfy the statutory elements of actionable conduct.

Further, Plaintiffs' claim is cognizable under Haw. Rev. Stat. §489-7.5, which

creates a private cause of action for the enforcement of HRS §489-3, by "any person

injured by an unlawful discriminatory practice," in a suit for damages and for

injunctive relief.  *Id*.  Both Plaintiffs Scarlet and GIG are cognizable "person[s]" protected under the statute.  Haw. Rev. Stat. §489-2 states that "`[p]erson' has the meaning prescribed in section 1-19 [as well as other entities.];" Haw. Rev. Stat.§1-19, in turn, defines the word "[p]erson" to include "not only individuals, but corporations, firms, [and other entities and groups] . . . where it appears, from the subject matter, the sense and connection in which such words are used, that such construction is intended."[2] *Id*.  Defendant HLC is also a suable defendant.  A municipal entity may be held liable for its discriminatory practices under HRS §489-3, both on the plain meaning of the statute, *see* Iddings v. Mee-Lee, 919 P.2d 263, 268 (Haw. 1996) (reciting the plain meaning rule), as well as by judicial interpretation.  Epileptic Foundation v. City and County of Maui, 300 F. Supp. 2d 1003, 1016-17 (D. Haw. 2003)(liability under H.R.S. §489-3 may attach to the Maui Department of Parks and Public recreation for discriminatory practices that resulted in the denial of access to public parks).

**E.    Defendant HLC breached its duty of care owed to Plaintiffs under state law by its negligent retention and training of HLC employees.**

---

[2] Plaintiffs also satisfy all requisites of third party standing to assert the rights of their customers and patrons.  *Id*.  Third party standing is appropriate when, as here, "the party asserting the right has a close relationship with the person who possesses the right [and] there is a hindrance to the possessor's ability to protect his own interests." In re AS, 312 P.2d 1193, 1220 (Haw. App. 2013), *quoting* Powers v. Ohio, 499 U. S. 400, 411 (1991).

The Hawai`i Supreme Court has long held employers to a reasonable duty of care when their employees, "because of the nature of their employment, may pose a threat of injury to members of the public." Janssen v. American Hawaiian Cruises, Inc., 731 P.2d 163, 166 (Haw. 1987).  Plaintiffs will offer evidence satisfying each element of such a claim:  that "(1) Defendant owed a duty of care to the Plaintiff[s]; (2) Defendant breached that duty by hiring or retaining an employee ever though Defendant knew, or should have known, of the employee's dangerous propensities; (3) the Plaintiff[s] suffered monetarily compensable physical or emotional injuries; and (4)  the breach of the duty was the proximate cause of Plaintiff[s]' [] physical or emotional injuries." Murphy v. Lovin, 284 P.3d 918, 928 (Haw. App. 2011).

Plaintiffs will produce evidence trial that Defendant HLC failed to discharge employees after receiving Plaintiff Scarlet's August 2021 complaint, and Mr. Jhumar Ray Waite's January 2023 complaint.  Plaintiffs will also show that investigators Tampua and Perez remain in HLC's employ, even though HLC is aware of their dangerous propensities.  HLC's retention of these employees, who pose a threat of danger to the public, breaches its duty of reasonable care to Plaintiffs, their patrons, and other LGBTQ+ licensees.

With respect to negligent training, Hawai`i state law is less clear. The Hawai`i Supreme Court has referred to negligent training claims, *see e.g.* Awakuni v. Awana, 15 P.3d 1027, 1046 (Haw. 2007), but the federal district court has observed that the

elements of such a claim have not been clearly defined.  *See* Hyun Ju Park v. City and County of Honolulu, 292 F. Supp. 3d 1010, 1102 at n. 14 (D. Haw. 2018); Flores v. City and County of Honolulu, 2019 U.S. Dist. LEXIS 194183 (D. Haw. 2019). Federal district court opinions are divided as to whether the Hawaiʻi Supreme Court would adopt California negligent hiring precedent,[3] or instead hold that negligent training is subsumed under the recognized Hawaiʻi tort of negligent control/supervision.[4]

Federal court guidance is consistent, though, that evidence of  foreseeability of harm is a requisite for liability under any test: that "ʻthe employer knew or should have known of the necessity and opportunity for exercising such control.ʼ" Otani v. City & County of Hawaiʻi, 126 F. Supp. 2d 1299, 1308 (D. Haw. 1998) *affʼd sub nom.*, Otani v. Hawaiʻi City Police Department, 246 F.3d 675 (9th Cir. 2000)(*quoting* Abraham v. S.E. Onorato Garages, 446 P.2d 821, 826 (Haw. 1968).   The nature of the work itself may give rise to such knowledge; that is, that "a particular job task poses a foreseeable risk of harm if performed without adequate training." Howard v.

---

[3] At least one court in this district has followed California law, which requires a plaintiff seeking relief on a negligent training cause of action to allege that (1) the employer negligently trained the employee regarding the performance of his job duties, (2) which led the employee, in the course of executing his job duties, (3) to cause an injury or damages to the plaintiff. *See* Ryder v. Booth, 2016 U.S. Dist. LEXIS 62534, at *11-12 (D. Haw. 2016) (citing Garcia ex rel. Marin v. Clovis Unified Sch. Dist., 627 F. Supp. 2d 1187, 1208 (E.D. Cal. 2009)).

[4] See Vargas v. City and County of Honolulu, 2020 U.S. Dist. LEXIS 114315, at *58 (D. Haw. 2020).

Hertz Corp., 2016 U.S. Dist. LEXIS 8439 at *18 (D. Haw. 2016).  Otani also averred that "[i]f an employer has not been put on notice of the necessity for exercising a greater degree of control or supervision over a particular employee, the employer cannot be held liable as a matter of law."  Id. at 1308.

In this case, Plaintiffs will show that Defendant HLC has been on notice for over 20 years—though criminal convictions, repeated external and internal audits, complaints from elected officials, licensees and citizens—that its Enforcement Section investigators were routinely inflicting harm on members of the public and HLC licensees.  Despite this depressing record, HLC did nothing to improve the quality or scope of training for existing or incoming staff.  Further, HC was directly on notice of complaints directed at particular employees by Scarlet and others, with no action being taken by HLC in response.  The injuries to Plaintiffs were plainly foreseeable under these facts; the Defendant breached its duty of care, apparent.

**F.**     **Plaintiffs are entitled to remedies including compensatory damages, lost profits, statutory remedies, nominal damages, injunctive relief, and reasonable attorney's fees, for claims on which they prevail.**

**1.** **Plaintiffs, if prevailing in claims arising under 42 U.S.C. §1983, Haw. Rev. Stat. §489-3, or negligent hiring or retention may be awarded compensatory damages for the injuries caused by Defendant's wrongdoing.**

Compensatory damages may be awarded to prevailing parties in claims arising under 42 U.S.C. §1983, Memphis Community School District v. Stachura, 477 U.S.

299 (1986), as well as under HRS §489-3, HRS §489-7.5, and state tort principles as allowable.

**2.   Plaintiffs, if prevailing in claims arising under 42 U.S.C. §1983, Haw. Rev. Stat. §489-3, or negligent hiring or retention, will request recovery of lost profits sustained as a result of Defendant's discriminatory acts.**

**(a.) Plaintiff Scarlet's lost profits due to Defendant's wrongdoing are not speculative and were caused by Defendant's wrongdoing.**

Plaintiff Scarlet bases its claim for lost profits directly on its actual profit history for periods in 2020 and 2021 when the venue was open and operating under COVID restrictions.  Lost profit projections calculated on the basis of comparable, actual operating conditions are not speculative for purposes of damages recovery.  *See e.g.,* Western Pacific Electric Company Corp. v. Dragados/Flatiron, 534 F. Supp. 3d 1209 (E.D. Cal. 2021).  Moreover, Plaintiffs will present evidence at trial that Defendant's discriminatory actions were the cause of Plaintiff Scarlet's venue closure for 65 weeks in 2020 and 2021, when it could have been operating consistently with all emergency closure orders then in effect.

**(b.)   Defendant HLC did not affirmatively plead mitigation of damages as a defense, and has not produced evidence that such mitigation was possible.**

While plaintiffs have a duty to mitigate lost profit damages, lack of mitigation is an affirmative defense on which defendants bear the burden of proof.  Defendants did not plead lack of mitigation as an affirmative defense and have therefore waived this issue.  In addition, defendants have offered no evidence that plaintiffs had the

opportunity to mitigate and yet failed to do so.  *See* <u>Kalima v. State</u>, 468 P.3d 143, 147 (Haw. 2020).

### 3. Plaintiffs, if prevailing in claims for violations of Haw. Rev. Stat. §489-3, will request statutory remedies pursuant to Haw. Rev. Stat. §489-7.5.

Haw. Rev. Stat. §489-7.5 provides that, if judgment is the plaintiff, the plaintiff shall be awarded a sum not less than $1,000 or threefold damages by the plaintiff sustained, whichever sum is the greater.  *Id*.  If Plaintiffs prevail on their claims for violations of §489-3, Plaintiffs will request this remedy.

### 4. Plaintiff GIG, if prevailing in its procedural due process claim arising under 42 U.S.C. §1983, will request nominal damages for that claim.

In <u>Carey v. Piphus</u>, 435 U.S. at 266-67, the Supreme Court held that a violation of procedural due process is actionable for nominal damages without proof of actual injury.  Plaintiff GIG has sustained actual injury as a result of Defendant's violation of its procedural due process rights, but if the Court finds that Plaintiff GIG's injuries are not recoverable in compensatory damages, Plaintiff GIG will request nominal damages pursuant to <u>Carey</u>.

### 5. Plaintiffs, if prevailing in any claim, will request permanent injunctive relief to prevent future injuries for which a remedy at law is inadequate.

Issuance of a permanent injunction is warranted when the party seeking such relief can show:  "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that

injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." ebay, Inc. v. MercExchange, 547 U.S. 388, 391 (2006).  Plaintiffs will request a permanent injunction enjoining Defendants from further infringement of their rights, as well as ordering affirmative adherence to operational and human resources policies redressing the deficiencies identified in this lawsuit.  Plaintiffs will present testimony at trial demonstrating Defendant's persistent resistance to effecting meaningful improvements to its operations, training and leadership, despite a history of staff wrongdoing and efforts by external constituencies to bring about reform.  Plaintiffs and their LGBTQ+ patrons and employees have been damaged in their enjoyment of full citizenship and respect as result of Defendant's actions, which are likely to continue absent equitable intervention.  Further, should Plaintiffs prevail on their claims under HRS §487-3, Plaintiffs will seek injunctive relief against Defendant's discriminatory practices pursuant to §489-7.5 (authorizing proceedings for injunctive relief).

6. **Plaintiffs, if prevailing on constitutional claims arising under 42 U.S.C. §1983 and/or statutory claim arising under Haw. Rev. Stat. §489-3, will request reasonable attorney's fees as authorized by law.**

   (a.) **Plaintiffs will request recovery of all attorney's fees and costs pursuant to 42 U.S.C. §1988 to which they may be entitled.**

42 U.S.C. §1988(b) allows the recovery of attorney's fees, in the court's discretion,  by a prevailing party in any action to enforce a provision of 42 U.S.C.

§1983.   Should Plaintiffs prevail on their constitutional claims under §1983, Plaintiffs will seek recovery for such fees.

**(b.)   Plaintiffs will request recovery of all attorney's fees and costs pursuant to HRS §489-7.5 to which they may be entitled.**

HRS  §489-7.5(a) authorizes recovery of a prevailing plaintiff's reasonable attorneys' fees together with the cost of suit, in a suit for damages and for injunctive relief for a violation HRS §489-3.   *See*  HRS  §489-7.5 (a)(1)(fees and costs authorized for damages suits);  HRS §489-7.5 (a)(2)(fees and costs authorized for injunction proceedings). Should Plaintiffs prevail on their claims under HRS §487-3, Plaintiffs will seek recovery for these attorney fees and costs.

Dated:      Honolulu, HI
            September 16, 2023

                              **DIPASQUALE & SUMMERS, LLP**
                              *Attorneys for Plaintiffs*


                    By:      */s/ James D. DiPasquale*
                           _____
                           James D. DiPasquale, 011033

24