IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| SCARLET HONOLULU, INC. and WALTER ENRIQUEZ, doing business as GAY ISLAND GUIDE,<br><br>          Plaintiffs,<br><br>    vs.<br><br>HONOLULU LIQUOR COMMISSION,<br><br>       Defendant. | Civil No. 21-00457 MWJS-KJM<br><br>ORDER ON PLAINTIFFS' MOTIONS IN LIMINE NOS. 1 – 2 AND DEFENDANT'S MOTIONS IN LIMINE NOS. 1 – 31 |

## __INTRODUCTION__

The plaintiffs in this lawsuit—a nightclub and an online media platform that serve the LGBTQ+ community—allege that the Honolulu Liquor Commission infringed their rights to equal protection and due process under the federal and state constitutions, violated their state-law right to be free from unlawful discrimination, and caused them injury because of its negligent training, supervision, and retention of employees.

A bench trial is scheduled for September 30, 2024, and the parties have filed motions *in limine* seeking pretrial guidance on certain evidentiary disputes. Plaintiffs have filed two such motions, docketed at ECF Nos. 198 and 199. Defendants have filed thirty-one of their own, which are docketed at ECF Nos.

167, 169 through 197, and 200.  The Court held a hearing on these motions on September 16, 2024.  ECF No. 243.

The Court now rules (or explains its reasons for reserving ruling) on the motions.  It assumes the reader's familiarity with the underlying facts and background and refers to them only as necessary to adequately address the issues presented.  Moreover, *in limine* rulings "are by their very nature preliminary," *United States v. Whittemore*, 776 F.3d 1074, 1082 (9th Cir. 2015) (quoting *Coursen v. A.H. Robins Co.*, 764 F.2d 1329, 1342 (9th Cir. 1985)), and while the parties must comply with them so long as they are in place, they remain free to renew their motions within the more particularized context of the trial itself.

## DISCUSSION

### A.     Plaintiffs' Motions *in Limine* Nos. 1 and 2 [ECF Nos. 198 and 199] and Defendant's Motion *in Limine* No. 7 [ECF No. 173]

The parties have filed competing motions *in limine* concerning the proposed testimony and report of Hui Chen, a strategic advisor who was retained to conduct a system review of the Commission's enforcement section.  The Commission argues that neither Chen's testimony nor her report should be admitted, arguing, among other things, that Chen has not been noticed as an expert and that her work product is untrustworthy.  Plaintiffs respond that Chen may testify as a lay witness and that her report is admissible as a public record.

For the report itself to fall within the public records exception to the rule against hearsay, it must, among other things, withstand objection based on trustworthiness.  *See* Fed. R. Evid. 803(8)(B).  Chen's report is sufficiently trustworthy to pass that test—it is based on an investigation initiated at the urging of the City Council, and Defendant has pointed to nothing about its source or surrounding circumstances that would prevent its admission at trial.

Nonetheless, based on the current record, the Court cannot find that Chen's report falls within the public record exception to hearsay.  Plaintiffs contend that it does so because it sets out "factual findings from a legally authorized investigation."  Fed. R. Evid. 803(8)(A)(iii).  Ninth Circuit case law, however, requires that an agency approve and adopt an outside investigator's report for it to constitute a public record.  *See Brown v. Sierra Nev. Mem'l Miners Hosp.*, 849 F.2 1186, 1189-90 (9th Cir. 1988) (holding interim reports filed by outside consultants did not fall within public records exception because they were not approved and adopted by the agency).  While Plaintiffs have suggested that the Commission has begun to implement some of Chen's recommendations, *see* ECF No. 198-1, at PageID.6428, they have not sufficiently teased out what aspects of the report have been implemented, nor fully addressed whether those implementations can be fairly viewed as adoption of the entirety of the report.

3

As an alternative ground for admission, it is possible that the report might constitute a statement by a party opponent under Rule 801(d)(2).  To fit under that hearsay exclusion, a statement could be, among other options, "made by a person whom the party authorized to make a statement on the subject."  Fed. R. Evid. 801(d)(2)(C).  Assuming the Commission authorized the report's creation, this category might, in theory, fit here.  But the Court will not conclusively find one way or another without briefing on the issue.

And finally, even if the report does fall within the scope of the public record or statement by a party opponent exception—neither of which the Court resolves today—it might still be excluded as a subsequent remedial measure.  *See* Fed. R. Evid. 407; *see also In re Aircrash in Bali*, 871 F.2d 812, 816 n.2 (9th Cir. 1989) (declining to decide whether post-accident studies generally qualify as remedial measures under Rule 407, and noting a split in authority on the issue).  The parties have not briefed this issue, either.

And so, the Court orders supplemental briefing on these matters, due September 20, 2024.  Both parties shall file supplemental briefs, not to exceed ten pages, addressing the applicability of the (1) public record, (2) statement by a party opponent, and (3) subsequent remedial measure rules of evidence to Chen's report.

As for Chen's testimony based on that report, the Court's ruling will turn largely on the admissibility of the report itself.  The Court therefore reserves ruling

on Plaintiffs' Motions *in Limine* Nos. 1 and 2 and Defendant's Motion *in Limine*

No. 7 pending submission of the parties' supplemental briefs.  Having

preliminarily addressed Plaintiffs' motions, the Court turns to Defendant's

remaining motions.

### B.      Defendant's Motion *In Limine* No. 1 [ECF No. 167]

The COVID-19 pandemic had a searing impact on the years 2020 and 2021.

While no one was unaffected, the pandemic harmed different people and

businesses in different ways.  Nightclubs faced particularly severe economic

impacts, and as Plaintiffs recognize in their operative complaint, "[d]ue to the

emergency orders shutting down nightlife operations within the State of Hawaii,

Scarlet was closed for the vast majority of 2020 and 2021."  ECF No. 50, at

PageID.460.[1]

Despite these allegations, Plaintiffs now argue that Scarlet was closed for the

vast majority of 2020 and 2021—a full 65 out of the total 104 weeks—because of

the Commission's alleged misconduct, rather than because of COVID-19.  ECF

No. 203-3, at PageID.6585 (alleging that the Commission's misconduct caused

Scarlet to close between July 12, 2020 and June 25, 2021 and between August 12,

---

[1]      *See also* ECF No. 50, at PageID.452 ("Like many businesses in the era of
COVID-19, Scarlet was closed for most of 2020 and 2021."); *id.* PageID.466 ("On
August 9, 2021 Scarlet closed again in response to the Governor's COVID-19
emergency order.  The nightclub remains closed.  Further, Gay Island Guide
paused events due to the Governor's emergency COVID-19 order.").

2021 and November 25, 2021).  Plaintiffs seek to present evidence and make arguments about these alleged lost profits at trial.

In its Motion *in Limine* No. 1, Defendant argues that Plaintiffs should be precluded from offering evidence or argument concerning lost profits from alleged closures at trial.  The Court is inclined to grant this motion.  But for the reasons explained below, the Court reserves ruling on the motion until it has had an opportunity to assess the challenged evidence at trial.

1.  Defendant begins by arguing that Plaintiffs' operative complaint suffers from a pair of technical or pleading errors.  Neither of these arguments is sufficient to preclude Plaintiffs' lost profits evidence.

First, Defendant argues that Plaintiffs should be precluded from seeking lost profits because the demand for judgment in the operative complaint makes no reference to lost profits.  ECF No. 167-1, at PageID.3884-85.  Although this argument may bear on whether Defendant received adequate notice of Plaintiffs' theory of relief—a matter taken up below—the argument is not, standing on its own, a sufficient reason to preclude Plaintiffs from seeking their preferred relief.  Courts are not limited "by the demand for judgment if a deviation seems appropriate at any point after the interposition of the pleading."  5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1255 (4th ed. June 2024 Update).  Indeed, "[t]he liberal policies reflected in Federal Rules of Civil

6

Procedure 15(a) and 15(b) permit the demand to be amended either before or during trial." *Id.* And "under Federal Rule of Civil Procedure 54(c), . . . the district court may grant any relief to which the evidence shows a party is entitled, even though the party has failed to request the appropriate remedy or remedies in his pleading." *Id.* Accordingly, Plaintiffs' failure to request lost profits in their operative complaint is not, standing alone, a sufficient reason to preclude them from seeking that relief at trial.

Second, Defendant argues that Plaintiffs should be precluded from presenting evidence of lost profits because the operative complaint "does not allege that any of [the Commission's allegedly wrongful actions] ever caused Scarlet Honolulu to close." ECF No. 167-1, at PageID.3885. This is essentially an argument that Plaintiffs failed to adequately state a claim for relief. But while Federal Rule of Civil Procedure 8(a)(2) requires a party to make sufficiently particularized factual allegations to render their claim for relief plausible—for example, they must allege sufficient facts to shore up their equal protection claim—the requirement of factual specificity does not apply to a demand for judgment. Wright & Miller, *supra*, § 1255 ("The sufficiency of a pleading is tested by the Rule 8(a)(2) statement of the claim for relief and the demand for judgment is not considered part of the claim for that purpose, as numerous cases have held." (footnotes omitted)). Plaintiffs had no obligation to make factual allegations about

7

how Defendant's conduct caused them to lose profits.  Indeed, as noted above, there is no absolute requirement that they specifically demanded a judgment of lost profits at all.

The upshot is that a lack of specificity in pleadings, standing alone, will not preclude Plaintiffs from presenting evidence of lost profits.  To be sure, if the lack of detail in Plaintiffs' complaint caused substantial prejudice to Defendant, that prejudice *could* be a basis for excluding the lost profits evidence.  For as the Ninth Circuit has explained, if "the failure to ask for particular relief substantially prejudiced the opposing party, Rule 54(c) does not sanction the granting of relief not prayed for in the pleadings." *Seven Words LLC v. Network Sols.*, 260 F.3d 1089, 1098 (9th Cir. 2001) (quoting *Rental Dev. Corp. v. Lavery*, 304 F.2d 839, 842 (9th Cir. 1962)).

Plaintiffs rejoin that the lack of specificity did not substantially prejudice Defendant, and they note that the complaint does request economic damages, as well as any appropriate relief.  The Court need not resolve whether Defendant was substantially prejudiced by the pleadings alone, because Defendant identifies a second way in which it was prejudiced:  Plaintiffs failed to provide a timely computation of their lost profits in their Rule 26(a) initial disclosures.  The Court turns to that issue next.

2.   Although Plaintiffs' initial disclosure and supplemental initial disclosure referred to lost profits, Defendant argues that these disclosures failed to include a "computation" of lost profits as required by Federal Rule of Civil Procedure 26(a)(1)(A)(iii).  ECF No. 167-1, at PageID.3888 (quoting *City & Cnty. of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 221 (N.D. Cal. 2003), for the proposition that Rule 26(a)(1)(A)(iii) requires "more than a lump sum statement of the damages allegedly sustained," and that the requirement to provide a "computation" requires disclosure of "some analysis into how they were calculated"); *see also Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1179-80 (9th Cir. 2008) (affirming district court's exclusion of damages evidence because "[d]isclosure of damage calculations was mandated under Rule 26(a)").

Plaintiffs concede that their initial disclosures violated this requirement. Although they represent that their initial disclosures provided the "complete tax returns" on which their projections were based, they acknowledge that they "misunderstood, though, the further requirement to explicitly 'show their work' in a computation format."  ECF No. 203, at PageID.6570.  And, as an exhibit to their opposition papers, Plaintiffs now purport to provide the computation that Rule 26 requires.  ECF No. 203-3, at PageID.6585-90.  That computation asserts that Scarlet was closed for the vast majority of 2020 and 2021 because of the alleged misconduct of Defendant, even though Scarlet's operative complaint alleges it was

closed for the vast majority of those years because of orders related to the COVID-19 pandemic.

Although Plaintiffs acknowledge that they failed to comply with Rule 26(a)'s computation requirement, they nonetheless argue that they should be permitted to present evidence and argument about lost profits at trial. They face the daunting standards of Federal Rule of Civil Procedure 37(c)(1), which generally provides that if a party fails to produce information required by Rule 26(a), they may not use the information at trial.

Substantial justification and harmlessness are "[t]wo express exceptions" that "ameliorate the harshness of Rule 37(c)(1)," but it is "the obligation of the party facing sanctions for belated disclosure to show that its failure to comply with [Rule 26] was either justified or harmless." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106-07 (9th Cir. 2001) (quoting *Wilson v. Bradlees of New England, Inc.*, 250 F.3d 10, 21 (1st Cir. 2001)). And in considering whether a party has carried its burden of showing that either of these exceptions applies, the Court is mindful that Rule 37(c)(1), "implemented in the 1993 amendments to the Rules, is a recognized broadening of the sanctioning power." *Id.* at 1106. It "clearly contemplates stricter adherence to discovery requirements, and harsher sanctions for breaches of this rule." *Id.* (quoting *Klonoski v. Mahlab*, 156 F.3d 255, 269 (1st Cir. 1998)). Indeed, in light of the strictness of the sanction, the

Advisory Committee Notes "describe it as a 'self-executing,' 'automatic' sanction to 'provide[] a strong inducement for disclosure of material." *Id.* (quoting Fed. R. Civ. P. 37 advisory committee's note to 1993 amendment).

Four factors "guide the determination of whether substantial justification and harmlessness exist, including (1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of trial; and (4) bad faith or willfulness in not timely disclosing the evidence." *Liberty Ins. Corp. v. Brodeur*, 41 F.4th 1185, 1192 (9th Cir. 2022) (quoting *Silvagni v. Wal-Mart Stores, Inc.*, 320 F.R.D. 237, 242 (D. Nev. 2017)).

Viewed against these factors, Plaintiffs have not carried their burden.  As to the first factor, the prejudice or surprise to Defendant here is self-evident. Plaintiffs did not provide a computation until their opposition to Defendant's motion *in limine*, a mere three weeks before trial.  Discovery has long closed, the deadline for noticing experts has long expired, and Defendant has been preparing for trial without the benefit of Plaintiffs' last-minute disclosure.  Counsel for Defendants represented at the hearing on this motion that, had he been provided timely notice of these computations, he would at least have conferred with an expert and possibly retained one.  *See In re Gorilla Cos.*, 454 B.R. 115, 119-20 (D. Ariz. 2011) ("Disclosing a computation of damages under Rule 26(a)(1) is

necessary for the opposing party to produce responding evidence, such as an expert opinion."). Such a conferral with an expert would, in turn, have pointed toward other possible issues to explore using the discovery process. And even without such a conferral, there are a number of obvious ways in which Defendant might have used the discovery process to probe Plaintiffs' computations, if they had been timely provided. To sketch out just a few examples, Defendant might have probed why Scarlet could not have opened at least occasionally during the alleged 65-week closure period. It could have challenged Plaintiffs' witnesses about the various alternative reasons why a nightclub might have had difficulty opening during the heart of the COVID-19 pandemic. Defendant might have sought document discovery related to Plaintiffs' decision to remain closed for 65 weeks in 2020 and 2021, to explore whether Plaintiffs' own records reveal other explanations for closure. And since Scarlet has now revealed that it calculates its lost profits during its 65-week closure period by using profits gained from periods when it was open, Defendant might have explored whether the weeks in which Scarlet was closed were truly similar in all material respects to the weeks when Scarlet was open. For instance, Defendant could reasonably have explored whether there were spikes in COVID-19 rates, tightening of emergency orders, or any challenges Scarlet itself faced in staffing its business with employees at any time during the alleged 65-week closure period.

Plaintiffs rejoin that "Defendant had every opportunity to investigate Plaintiffs' damages claims through written discovery, depositions, and even follow-up questions after receiving supplemental disclosures," and they fault Defendant for simply choosing not to do so.  ECF No. 203, at PageID.6571.  In this way, Plaintiffs essentially concede that Defendant has not fully availed itself of the discovery process to test its damages calculations.  Plaintiffs seek to blame Defendant for that shortcoming, but the blame falls with Plaintiffs for having concededly failed to provide a computation of their alleged lost profits.  *See In re Gorilla Cos.*, 454 B.R. at 120 (explaining that "the disclosure obligation is automatic—the functional equivalent of court-order[ed] interrogatories" and a failure to provide the computation therefore "cannot be justified" on the ground that the opposing party "failed to request the computation before trial").

Indeed, even though Plaintiffs referred to lost profits in their Rule 26(a) disclosures, their failure to provide a timely computation of those figures is highly significant in the factual context of this case.  That is because without a computation, Defendant could not reasonably be expected to infer that Plaintiffs intended to prove at trial that Scarlet was closed for the vast majority of 2020 and 2021—a full 65 weeks out of the total of 104—because of Defendant's alleged misconduct.  For one thing, Plaintiffs are not challenging a government order that it close for the 65-week period; it is undisputed that, while Defendant had the

13

authority to order COVID-19-related closures, it never ordered Scarlet to close. Plaintiffs' argument, instead, is that they made their own decision to close for that entire period because of how they perceived Defendant's alleged misconduct to affect their business and patrons. This is not the sort of theory of recovery that is readily evident, and the failure to provide a computation is therefore all the more significant. For another, Plaintiffs' operative complaint alleges that Scarlet was closed for the "vast majority of 2020 and 2021," not because of anything Defendant did, but because of "the emergency orders shutting down nightlife operations within the State of Hawaii." ECF No. 50, at PageID.460. A lost profits theory that is factually inconsistent with a plaintiff's own complaint is not a theory a defendant should be expected to reasonably anticipate.[2]

The second factor in assessing substantial justification or harmlessness asks whether Plaintiffs might cure the prejudice. At this point, there is no realistic way for them to do so. Plaintiffs waited until three weeks before the start of trial to provide a computation of lost profits—in a case that has been pending in this

---

[2] Plaintiffs suggest that while they were closed "for substantial periods" because of COVID-19, they also closed due to Defendant's wrongdoing "when it could have been open and operating in compliance with COVID parameters." ECF No. 203, at PageID.6574. But a suggestion that Scarlet could have been open for the vast majority of 2020 and 2021 is simply not consistent, on its face, with the factual allegation in the complaint that it was closed for the vast majority of those years because of emergency orders. There is no reason why Defendant should have been expected to intuit the unlikely interpretation of the complaint that Plaintiffs now propose.

District for approximately three years.  It is simply not feasible to restart the clock on this case to allow Defendant an opportunity to make full use of the discovery process at this late stage.  And while Plaintiffs propose to "reimburse Defendant[] for any reasonable attorney's fees and costs incurred as a result of addressing any perceived deficiencies in prior damages disclosures," ECF No. 203, at PageID.6572, the *expense* of redoing discovery and further delaying trial is merely one of the ways in which Defendant would be harmed by Plaintiffs' proposal. Having to reopen discovery and further delay trial is, in itself, a significant harm.

Recognizing as much, the third factor asks about the likelihood that trial would be disrupted.  Here, there is no conceivable way to preserve the current trial date of September 30, 2024, or to conclude trial within a reasonable timeframe, while also ensuring that Defendant has a full and fair opportunity to challenge Plaintiffs' lost profits evidence and argument.  To adequately address the prejudice to Defendant, the Court would have to afford Defendant time to conduct an investigation into Plaintiffs' last-minute computations, to prepare to try to undermine the credibility of those computations at trial, and to confer with a possible expert (who might then need to be tested against *Daubert*'s reliability standards).  That the Court would be required to reopen discovery and continue a trial date to afford Defendant a full and fair opportunity to challenge Plaintiffs' lost profits theory weighs in favor of exclusion.  *Hoffman*, 541 F.3d at 1180 ("Later

15

disclosure of damages would have most likely required the court to create a new briefing schedule and perhaps re-open discovery, rather than simply set a trial date. Such modifications to the court's and the parties' schedules supports a finding that the failure to disclose was not harmless."); *see also Wong v. Regents of Univ. of Cal.*, 410 F.3d 1052, 1062 (9th Cir. 2005) ("Disruption to the schedule of the court and other parties in that manner is not harmless.  Courts set such schedules to permit the court and the parties to deal with cases in a thorough and orderly manner, and they must be allowed to enforce them, unless there are good reasons not to.").[3]

The fourth and final factor is Plaintiffs' bad faith or willfulness in not timely disclosing the required information.  The Court does not find that Plaintiffs acted in bad faith or willfully here.  But "exclusion is an appropriate remedy for failing to fulfill the required disclosure requirements of Rule 26(a)" even when there is no "showing in the record of bad faith or willfulness."  *Yeti by Molly*, 259 F.3d at 1106; *see also Hoffman*, 541 F.3d at 1180 ("[W]e reject the notion that the district court was required to make a finding of willfulness or bad faith to exclude the

---

[3]      At the hearing on this motion, Plaintiffs suggested that the Court could bifurcate the trial and consider liability first and lost profits at a later date.  That would lessen the prejudice to the Defendant and to the Court's schedule by allowing at least some of the trial to be wrapped up on time, but it would not adequately address that prejudice—as it would still require a reopening of the discovery deadline, allowing Defendant an opportunity to consult with an expert, and delaying of the conclusion of this trial.

damages evidence.").  And while Plaintiffs did not act in bad faith, they lacked any

justification whatsoever for their violation of the rule.  The only explanation they

offer is that they "misunderstood" the requirements of Rule 26(a)(1)(A)(iii).  ECF

No. 203, at PageID.6570.  That is not a justification, let alone a substantial one.

*See Yeti by Molly, Ltd.*, 259 F.3d at 1106 (affirming district court's conclusion that

defendants lacked a substantial justification when their only proffered justification

was that they were "under the mistaken belief" that a report would be

supplemented and were waiting for a final version before disclosing it); *Hoffman*,

541 F.3d at 1179-80 (finding no substantial justification where plaintiffs argued

that the "right to individualized discovery" in the class action context was

"unsettled").

\*     \*     \*

For the foregoing reasons, the Court is inclined to grant Defendant's Motion

*in Limine* No. 1.  Ordinarily, that would lead the Court to simply grant the motion.

But under the circumstances of this case, there are considerations that lead the

Court to reserve ruling at this time.  In support of its motion, Defendant makes

arguments that are highly factbound, and although the Court finds those arguments

convincing on the papers, the Court will be in a better position to definitively

assess their merits after it has heard the evidence for itself.  Among other things, by

allowing Plaintiffs to present their lost profits theory, the Court will be better

17

positioned to evaluate the precise extent and significance of the prejudice Defendant has suffered as a result of Plaintiffs' Rule 26(a) violation. And that, in turn, will allow the Court to make a better ruling, more firmly grounded in the particulars of the evidence presented at trial.

The Court recognizes that, by reserving ruling this way, it places Defendant in the position of not having a full and fair opportunity to challenge Plaintiffs' lost profits theory. For example, as recognized above, reserving ruling means that Defendant will be required to test Plaintiffs' lost profits evidence without having had the benefit of a conferral with an expert and the use of discovery tools to develop a defense case against Plaintiffs' theory.

But for the reasons stated, the Court concludes that reserving ruling is the most appropriate course. Plaintiffs will be allowed to present their evidence of Scarlet's alleged lost profits at trial. And after hearing this evidence, the Court will—on a fully developed factual record—make a final determination of whether that evidence should be admitted at all.

### C.     Defendant's Motion *in Limine* No. 2 [ECF No. 169]

One of the ways in which Plaintiffs intend to prove their equal protection clause claim is through statistical evidence. Defendant argues that this evidence is unreliable and should be excluded from trial, particularly because Plaintiffs have not noticed an expert to evaluate the data. In denying Defendant's motion for

summary judgment on Plaintiffs' equal protection challenge, this Court reasoned that the statistical data "show[s] a disparity in inspection rates—a discrepancy that can be deduced using rudimentary mathematical calculations."  ECF No. 132, at PageID.2983 n.17.  For that reason, the Court concluded that Defendant had cited "to no rule of evidence showing this data would be necessarily excluded."  *Id.*

Defendant has now made additional arguments against the admission of the statistical data, but again, the Court will be better positioned to evaluate their merits after hearing the evidence.  For that reason, the Court reserves ruling on Defendant's Motion *in Limine* No. 2, and Plaintiffs are permitted to present their statistical evidence at trial.  After hearing the evidence, the Court will decide whether the evidence is properly admissible and what weight, if any, to give to it.

### D.    Defendant's Motion *in Limine* No. 3 [ECF No. 170]

Another way in which Plaintiffs intend to prove their claims is through the anticipated testimony of Jhumar Ray Waite, a member of the LGBTQ+ community who formerly served as an investigator for Defendant.  Among other things, Waite is expected to testify that when he was sworn in as an investigator, a supervisor, Anna Hirai, commented that "we are trying something new here with this new investigator, it's an experiment, the first of its kind."  ECF No. 170-1, at PageID.5816.  And Waite is expected to testify that he came to understand that this remark was a reference to his sexual orientation.  *Id.*

19

A court may admit "lay opinion testimony" where it is (1) "rationally based on the perception of the witness" and (2) "helpful to the jury in acquiring a 'clear understanding of the witness' testimony or the determination of a fact in issue.'" *United States v. Simas*, 937 F.2d 459, 464 (9th Cir. 1991) (quoting Fed. R. Evid. 701).

When a witness proposes to testify about a statement made to them, the first of these requirements is met.  So the key question is whether the second requirement is satisfied.  That is the case when "a lay witness' opinion concerning the witness' understanding of the declarant's statements or conduct may be helpful to the jury."  *Id.*  For example, where a person's statements to the witness are "vague and, at times, seemingly incomprehensible," the "listener's understanding of the words and innuendo" can be "helpful to the jury in determining" what the speaker "meant to convey."  *Id.*  That is precisely the case here.  For that reason, Defendant's Motion *in Limine* No. 3 is DENIED.

To be sure, Defendant remains free to impeach the credibility of Waite's expected testimony.  For example, Plaintiffs appear to suggest that Waite did not initially understand Hirai to be referring to his sexual orientation, but that he "later came to understand" it that way.  ECF No. 205, at PageID.6650.  That is fair grounds for cross-examination, but Waite should be permitted an opportunity to testify about his understandings at trial.

20

### E.      Defendant's Motion *in Limine* No. 4 [ECF No. 171]

According to the operative complaint, on Saturday, October 23, 2021,

Plaintiff Gay Island Guide hosted a gay pride event for the first time since the start

of the COVID-19 pandemic.  ECF No. 50, at PageID.457.  The event was hosted at

the White Sands Hotel, an establishment that, Plaintiffs allege, had never before

received a violation from Defendant.  *Id.* at PageID.459.  Yet two of Defendant's

investigators arrived, outside of inspection hours, with an allegedly pretextual (and

anonymous) noise complaint, after which they "threatened to shut down the

LGBTQ+ daytime event soon after they arrived, and they refused to show

representatives of either Gay Island Guide or the White Sands Hotel a decibel

sound reader to indicate an actual noise issue."  *Id.* at PageID.458-59.  The

investigators ultimately issued "several unfounded citations, and suspended White

Sands Hotel's liquor license for 24-hours without cause."  *Id.* at PageID.459.

Plaintiffs' complaint alleges that this violated Gay Island Guide's constitutional

due process rights.

Defendants now move to preclude evidence of the violation issued to White

Sands Hotel, arguing that it is "irrelevant" because White Sands Hotel "is not a

plaintiff in this action," is not "a gay establishment," and pleaded "no contest" to

the violation.  ECF No. 171-1, at PageID.5823-24.

Plaintiffs respond that Defendant's treatment of White Sands Hotel is highly relevant to their due process claim because the hotel was providing a venue for an LGBTQ+ event hosted by Plaintiff Gay Island Guide.  The Court agrees.  Although White Sands Hotel itself is neither a plaintiff nor identified as an LGBTQ+ establishment, Defendant's alleged mistreatment of it while it was hosting an LGBTQ+ event on behalf of a Plaintiff is highly relevant.  And evidence of the violations that were issued is also relevant, to the extent Plaintiffs are able to prove that those violations were pretextual.  For these reasons, Defendant's Motion *in Limine* No. 4 is DENIED.

### F.    Defendant's Motion *in Limine* No. 5 [ECF No. 172]

Robert Baldwin is a minority owner of Plaintiff Scarlet, and Plaintiffs seek to call him to testify about the impact of Defendant's alleged misconduct on Scarlet, as well as on the broader LGBTQ+ community.  Defendants move to preclude this proposed testimony.

To the extent Baldwin's proposed testimony focuses on lost profits, it is permitted subject to the Court's final determination at trial based on the Court's ruling on Defendant's Motion *in Limine* No. 1.  And if there are other effects on Scarlet's business about which Baldwin seeks to testify, Plaintiffs are permitted to call him to do so, so long as they lay a foundation that he was intimately involved in the operation of Scarlet, as they proffer in their opposition papers.  "There is an

abundance of case law where corporate employees are permitted to testify about damages or company valuation without qualifying as an expert." *Erhart v. Bofl Holding, Inc.*, 445 F. Supp. 3d 831, 842 (S.D. Cal. 2020) (cleaned up).  The basic idea underlying these cases is that the lay opinion testimony is admitted "because of the particularized knowledge that the witness has by virtue of his or her position in the business." *Id.* (quoting Fed. R. Evid. 701 advisory committee's note to 2000 amendment).

Defendant nonetheless argues that Baldwin should not be allowed to testify about effects on Scarlet because he was not noticed as a Rule 30(b)(6) witness for the company during the discovery process.  *See* Fed. R. Civ. P. 30(b)(6).  But at the hearing on this motion, Defendant conceded that a party need not notice, for Rule 30(b)(6) purposes, every witness who could conceivably testify about damages to a company.  So long as Plaintiffs lay the foundation they propose, Baldwin will be permitted to testify about effects on Scarlet.

Defendants separately argue that Baldwin should not be permitted to testify about the effects that Defendant's alleged misconduct had on the broader LGBTQ+ community.  The Court agrees that, if Baldwin wishes merely to testify about statements that others have made to him, that will be inadmissible hearsay unless there is some other basis for admission (e.g., if it is a party opponent statement).

But the Court will permit Plaintiffs to present Baldwin's testimony at trial and will assess the admissibility of any testimony offered after hearing it.

The Court therefore DENIES IN PART Defendant's Motion *in Limine* No. 5 and reserves ruling on it in part.

### G. Defendant's Motion *in Limine* No. 6 [ECF No. 175]

Robert Sobieralski, Baldwin's domestic partner, is prepared to testify that one of Defendant's investigators, Catherine Fontaine, sought to secure a temporary restraining order against him in "an attempt to tamper with Baldwin, a key figure in the case, by targeting someone close to him." ECF No. 208, at PageID.6672. Sobieralski is also expected to testify about information he has secured from Defendant and the City of Honolulu through public records requests he has made under Hawaii's Uniform Information Practices Act (UIPA). *Id.*

Defendant moves to preclude Sobieralski from testifying. It argues he has no personal knowledge of any relevant fact, and that he has not been noticed as an expert. It argues he should not be permitted to offer opinions about matters that would require specialized knowledge.

At this stage, the Court does not agree. Sobieralski has personal knowledge of Fontaine's efforts to obtain a temporary restraining order against him. Although the relevance of that evidence is not obviously overwhelming, the Court concludes that Plaintiffs should be permitted to present it and to make arguments for its

relevance at trial.  Furthermore, to the extent Sobieralski is highly familiar with

public records he obtained directly from Defendant, the Court concludes that it

would be useful to the finder of fact to have Sobieralski testify about key matters

within those documents—just as a party might offer a lay witness to testify about

key matters within a trove of business documents or surveillance footage they have

carefully reviewed.  Sobieralski will not, however, be permitted to offer opinions

about Defendant or its employees, as he has not been noticed as an expert in

assessing the flaws in a public agency or public employees' performance.  As far

as UIPA documents are concerned, Sobieralski's testimony will be limited to

summarizing and highlighting facts he has found within documents that are

themselves separately admissible.

With these understandings, Defendant's Motion *in Limine* No. 6 is DENIED

IN PART and GRANTED IN PART.[4]

---

[4]    Defendant separately argues that Sobieralski should be precluded from testifying about UIPA documents that he received after the discovery cutoff. Defendant cites no authority that would support precluding a party from relying on public documents, lawfully provided to their witness, through a public records request.  Hawaiʻi Revised Statutes § 92F-13, the sole authority offered by Defendants, protects government records that "would not be discoverable," *id.* § 92F-13(2), but Defendants have not persuasively argued that this encompasses records that are otherwise discoverable and merely obtained after the discovery deadline.  The Court therefore does not, based on the information currently before it, find this argument convincing.

H.      **Defendant's Motions** *in Limine* **Nos. 8 through 31 [ECF Nos. 174, 176 through 197, and 200]**

As for the remainder of Defendant's motions *in limine*, the Court concludes that it will be better positioned to evaluate the merits of the motions if it first hears the evidence at issue at trial.  Accordingly, the Court reserves ruling on these motions and will take them up at or after trial.

## CONCLUSION

For the foregoing reasons, the Court rules as follows on the pending motions *in limine*:

- The Court reserves ruling on Plaintiffs' Motions *in Limine* Nos. 1 and 2, and Defendant's Motions *in Limine* Nos. 1, 2, and 7 through 31.

- The Court DENIES Defendant's Motions *in Limine* Nos. 3 and 4.

- The Court DENIES IN PART and reserves ruling in part on Defendant's Motion *in Limine* No. 5.

- The Court GRANTS IN PART and DENIES IN PART Defendant's Motion *in Limine* No. 6.

IT IS SO ORDERED.

DATED:  September 17, 2024, at Honolulu, Hawai'i.

/s/ Micah W.J. Smith
_____
Micah W.J. Smith
United States District Judge

Civil No. 21-cv-00457 MWJS-KJM, *Scarlet Honolulu, Inc.*, et al. *v. Honolulu Liquor Commission*; ORDER ON PLAINTIFFS' MOTIONS IN LIMINE NOS. 1 – 2 AND DEFENDANT'S MOTIONS IN LIMINE NOS. 1 – 31.