James D. DiPasquale  #11033
DIPASQUALE & SUMMERS, LLP
737 Bishop Street, Suite 1460
Honolulu, Hawaii 96813
Tel:       (808) 240-4771
Email:     james@ds-lawoffices.com

Attorneys for Plaintiffs SCARLET HONOLULU, INC.
AND WALTER ENRIQUEZ D/B/A GAY ISLAND GUIDE, LLC

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| SCARLET HONOLULU, INC.; WALTER ENRIQUEZ d/b/a GAY ISLAND GUIDE,<br><br>Plaintiffs,<br><br>-against-<br><br>HONOLULU LIQUOR COMMISSION,<br><br>Defendant. | Civil No.: 1:21-cv-457-MWJS-KJM<br><br>**PLAINTIFFS' <u>SUPPLEMENTAL BRIEF</u>** |

**PLAINTIFFS' SUPPLEMENTAL BRIEF ON THE ADMISSIBILITY OF THE "LIQUOR ADMINISTRATION ENFORCEMENT SYSTEM REVIEW: REPORT OF FINDINGS AND RECOMMENDATIONS" (THE "<u>CHEN REPORT</u>")**

# I. INTRODUCTION

Plaintiffs submit this supplemental brief in response to the Court's request for further clarification on three specific issues concerning the admissibility of the "Liquor Administration Enforcement System Review: Report of Findings and Recommendations" ("the Chen Report") and the testimony of Hui Chen. The Court seeks briefing on the following issues: (1) whether the report was "approved and adopted" such that it qualifies as a public record under Fed. R. Evid. 803(8)(c)(iii) and the implications of such adoption for its admissibility; (2) whether the report qualifies as an adverse party statement; and (3) whether the report constitutes a subsequent remedial measure under Federal Rule of Evidence 407, or whether subsequent actions taken after the report should be viewed as remedial measures.

# II. ARGUMENT

**1.   The Chen Report Was Commissioned, Adopted, and Actively Implemented by the Honolulu Liquor Commission, and Is Admissible as a Public Record Under FRE 803(8)**

The Court has requested additional briefing on whether the "Chen Report" falls within the definition of a public record under Federal Rule of Evidence 803(8)(c)(iii), which allows for the admissibility of "factual findings from a legally authorized investigation" as an exception to the hearsay rule. The Court cites <u>Brown v. Sierra Nevada Memorial Miners Hospital</u>, 849 F.2d 1186, 1189-90 (9th Cir. 1988) for the proposition that Rule 803 (8)(c)(iii) requires that "an agency approve and

1

adopt an outside investigator's report for it to constitute a public record." Dkt. #247 at p. 3. The Court's view seems to be that, applying the Brown holding to the facts in this case, the relevant agency that must approve the report antecedent to its admissibility is the Honolulu Liquor Commission, and that Hui Chen, the lead investigator, is an "outside investigator" as Brown intends that term. Respectfully, Plaintiff believes that Brown applies differently to our facts. As Plaintiffs construe Brown, approval of the report *by the HLC* is not a requisite to its admissibility, nor is Ms. Chen an "outside consultant" as that term is used in the precedent.

A close look at the facts at issue in Brown, and the cases Brown itself relies on, Zenith Radio Corp. v. Matsushita Electrical Industries Co., 505 F. Supp. 1125, 1145 (E.D. Pa. 1980), and City of New York v. Pullman, Inc., 662 F.2d 910, 915 (2d Cir. 1981), clarifies the Plaintiffs' position. In all three cases, the issue was whether "raw" material that had been submitted to an investigative body, or provisional analyses generated by subordinate staff within the investigative process, constituted free-standing "findings" of the "legally authorized" investigation. The issue, that is, was the finality of the contents of the investigative report itself, not whether the entity under investigation had endorsed it.

In Brown, at issue was whether two consultants' letters, submitted to a state Board of Medical Quality Assurance (BMQA) in the course of an investigation of a complaint against a physician, were "stand alone" public records. The Brown court

2

held they were not, since the BMQA, the public agency that conducted the "legally authorized investigation," had not adopted the letters by incorporating them into its report. The facts in Zenith Radio, the case Brown relied on for its primary holding, were similar. There, the court examined whether all the raw materials assembled by staff for consideration by the Federal Trade Commission—the entity conducting the "legally authorized investigation" --should be admissible, separate and apart from the FTC's published recommendations. The Court concluded that only the findings ultimately incorporated into the final report by the FTC qualified as public records. Similarly, in City of New York v. Pullman, Inc., 662 F.2d 910, 915 (2d Cir. 1981), the Second Circuit held that an interim staff report, generated within the federal agency charged with investigating railway safety compliance, the Urban Mass Transit Administration (UMTA) was not a public record because interim reports do not constitute findings of the investigative agency. In Pullman, the UMTA issued no final report at all. In all three cases, the body responsible for approving the investigative findings was the investigating entity—the body that was "legally authorized" to conduct the investigation in the first instance: the BMQA in Brown, the FTC in Zenith Radio, the UMTA in Pullman.

In this case, the entity legally authorized to conduct the investigation was the *ad hoc* Strategic Review Team, constituted and tasked in the first instance by the Office of the Managing Director ("OMD"), to be conducted by Ms. Hui Chen with

3

support from two other OMD staff members, approved by the Honolulu Liquor Commission, operating under the aegis of the Deputy Managing Director, with authority to hire Ms. Chen delegated to the Managing Director's office by the HLC. As the entity legally authorized to conduct the investigation, it was the Strategic Review Team—not the HLC--that was responsible for adopting the factual findings that would constitute its report, and thereby the material admissible as a public record under Rule 803(8)(c).[1] The Plaintiff makes no claim that raw data, documents that may have been submitted by outside sources, or interim status reports that may have been generated in the course of the investigative process, should be admissible under the rule. Such materials would concededly be inadmissible under Brown. Nor is Ms. Chen an "outside consultant" as in Brown, describing external experts who had contributed advisory material to an investigation; Ms. Chen herself conducted

---

[1] There is no requirement that the entity charged with conducting a "legally authorized" investigation itself be a public agency. A citizen review committee may function in such a role, see Gilbrook v. City of Westminster, 177 F.3d 839, 848 (9th Cir. 1999)(citizens' committee appointed by City Council to review city budget; committee report which "set off a political firestorm" admissible as public record), or *ad hoc* teams comprised of academic and private sector professionals, see St. Bernard Parish Gov't. v. U.S., 121 Fed. Cl. 747 (U.S. Ct. of Fed. Claims 2015)(reports created by such teams charged by the U.S. Army Corps of Engineers to investigate responsibility for Hurricane Katrina levee failures admissible as 803(8)(c)(iii) public records), as well as individual investigators charged with exploring specific areas of public concern, see Barnes v. D.C., 924 F. Supp. 2d 74 (D.D.C. 2013). It just so happened that in Brown, Zenith Radio, and Pullman, the investigating entities were public agencies—the size and complexity of which made the finality issue more salient.

4

the investigation, as the designated lead. The report was submitted by Ms. Chen to the HLC at its June 29, 2023 meeting in its final, adopted form.  Meeting minutes attached as <u>Exhibit A</u>.

Even if the Court concludes that approval and adoption by the HLC is a requisite to the admissibility of the Chen Report as a public record, the facts show that such an adoption has occurred. The July 25, 2024, HLC Board Packet includes a Systems Review Recommendations Matrix (attached as <u>Exhibit B</u>) that outlines the status of each recommendation from the Chen Report. This matrix shows that many of the recommendations have already been completed, while others are actively in progress. This comprehensive tracking and systematic implementation of the report's findings manifests not only the HLC's approval and adoption of the report, but its elevation to a crucial policy-making guide that has been fully integrated into the HLC's governance framework.

In terms of content, the matrix within the Board Packet comprehensively tracks the report's recommendations ranging from technology upgrades—such as the replacement of manual DAR input with GPS tracking—to more profound systemic reforms, such as the inclusion of gender identity and gender expression in the HLC's anti-discrimination rule. Additionally, the HLC has enhanced training for its investigators, collaborating with the National Liquor Law Enforcement Association to address the deficiencies identified in the report. This ongoing effort

underscores that the HLC has not only acknowledged the report but has operationalized its findings as the foundation for comprehensive reform within the Commission.

Moreover, there are no indicia of untrustworthiness suggesting that the report should nevertheless be excluded. The Chen Report has become the guiding document for the HLC's ongoing reforms, and the direct connection between the findings in the report and the actions taken by the Commission reinforces its reliability and trustworthiness.

**2.    The Chen Report Qualifies as a Statement of a Party Opponent Under FRE 801(d)(2)(D) and FRE 801(d)(2)(B)**

Rule 801(d)(2)(D) allows the admission of statements made by an agent or employee on a matter within the scope of their relationship with the opposing party and while the relationship existed. As detailed above, the launch of the project investigating the operations of the HLC was a hybrid affair. The investigation was initiated by the Office of the Managing Director, and Ms. Chen worked out of the OMD in the course of her work. But the HLC treated the investigation as an activity under its purview as well. The HLC reviewed the proposed workplan, and formally delegated its authority to hire Ms. Chen to the OMD, an action that would have been unnecessary if the HLC did not consider Ms. Chen its agent in conducting the project, and approve that she do so. In Barnes v. District of Columbia, 924 F. Supp. 2d 74 (D.D.C. 2013), the D.C. District Court considered the party admission rule as

6

it applied in a similar context. In <u>Barnes</u>, the defendant DOC sought to exclude a report that had been commissioned initially by one oversight entity, the D.C. Criminal Justice Coordinating Council, and then with the concurrence of others, including the defendant agency. The <u>Barnes</u> court held that in such circumstances, the investigator acted as the defendant's agent in preparing the report, since it had been one of the commissioning entities that launched the investigation. *Id.* at 98.

Moreover, the Chen Report also meets the requisites of Fed. R. Evid. 801(d)(2)(B), in that the report is a statement that the HLC has manifested that it has adopted or believes to be true. The July 25 HLC Board Packet unequivocally demonstrates that the Commission has adopted the report and is acting on its findings. These actions show that the Chen Report, developed in accord with the HLC's initial approval and project objectives, now form an integral part of the Commission's own governance and operational processes. It is, in effect, a statement by the Commission about its own internal practices, policies, and enforcement deficits which it believes to be true. The HLC's own actions, as outlined in the Board Packet, provide clear evidence that the report has been adopted by the agency as part of its official response to the investigation, thus meeting the criteria for admissibility under Rule 801(d)(2)(B).

Further, and specifically, statements made by HLC staff in the course of interviews conducted by Ms. Chen and presented in the report are non-hearsay

statements by a party opponent, under Rule 801 (d)(2)(D), as those staff members were employees of the HLC and their statements dealt with matters within the scope of their employment.

3. **The Chen Report Is Not a Subsequent Remedial Measure Under FRE 407, and Any Actions Taken in Response Are the Actual Remedial Measures**

The Chen Report itself is not a subsequent remedial measure under Federal Rule of Evidence 407, which excludes evidence of corrective actions taken after an incident to prove negligence or culpable conduct. The purpose of Rule 407 is to encourage entities to make improvements without fearing that such actions will be used against them in litigation. However, the rule does not apply to the report itself, which is an investigative document rather than a corrective action.

The Chen Report serves to identify deficiencies and recommend changes, but it is not the corrective action; rather, it is the analysis preceding those actions. The distinct line between the report's findings and the measures implemented by the HLC is critical. The subsequent measures taken by the HLC, such as amending their rules to include protections for gender identity and expression, represent the actual remedial actions.

This distinction is supported by the policy underlying Rule 407, which is to prevent discouragement of improvements. The rule is not intended to exclude evidence that elucidates the feasibility of precautionary measures or the recognition

8

of existing issues prior to the implementation of corrective actions. Thus, while the remedial actions themselves might be excluded if used to prove negligence, the Chen Report remains admissible for other purposes.

Furthermore, the report's admissibility is reinforced by its role in demonstrating the HLC's awareness of systemic problems and the feasibility of improvements. Courts have often recognized that documentation of an entity's understanding of its operational challenges is relevant and admissible for purposes such as establishing knowledge, feasibility of precautionary measures, and intent.

The measures detailed in the July 25 Board Packet, such as the introduction of new training protocols and technology upgrades, are the subsequent remedial measures under Rule 407. These actions reflect the HLC's response to the findings of the Chen Report and are separate from the report itself, which merely identified the areas needing improvement. Therefore, the Chen Report is not barred by Rule 407 and remains a vital piece of evidence illustrating the HLC's prior knowledge and the necessity of the changes eventually enacted.

This approach aligns with judicial interpretations that balance the encouragement of remedial measures with the need for transparency and accountability regarding pre-existing conditions. By maintaining this distinction, the Chen Report's role in highlighting systemic issues is preserved, allowing it to inform the Court of the HLC's internal challenges and efforts towards reform.

## III. CONCLUSION

For the reasons discussed above, the Chen Report should be admitted as a public record under FRE 803(8) and as a statement of a party opponent under FRE 801(d)(2)(D). The report does not constitute a subsequent remedial measure under FRE 407, as the actual remedial actions taken by the HLC occurred after the report was issued and are distinct from the report itself. Plaintiffs respectfully request that the Court find in favor of admitting the report and the testimony of Hui Chen.

Dated:    Honolulu, HI
         September 20, 2024

**DIPASQUALE & SUMMERS, LLP**

By:  */James D. DiPasquale/*

James D. DiPasquale, #11033