IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| SCARLET HONOLULU, INC. and WALTER ENRIQUEZ, doing business as GAY ISLAND GUIDE,<br><br>Plaintiffs,<br><br>vs.<br><br>HONOLULU LIQUOR COMMISSION,<br><br>Defendant. | Civil No. 21-00457 MWJS-KJM<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO PRECLUDE TESTIMONY OF JOHN BALDWIN |

## INTRODUCTION

On October 6, 2024, Defendant Honolulu Liquor Commission moved to preclude the testimony of John Baldwin,[1] whom Plaintiffs wish to call in their case-in-chief to testify about his compilation of summary charts and his assessment of certain statistical data. ECF No. 263. According to the Commission, Plaintiffs failed to disclose Baldwin's testimony in their initial

---

[1] Plaintiffs also intend to call Robert Baldwin as a witness in this case. In this order, all references to Baldwin are references to John Baldwin.

and supplemental disclosures, in violation of Federal Rule of Civil Procedure 26.  The Commission further argues that Plaintiffs never noticed Baldwin as an expert, and that he cannot testify as a lay witness about the proposed matters.

Plaintiffs opposed the motion in writing that same day.  ECF No. 264.  The Court heard argument on the motion on the morning of October 7, 2024, at which time it orally ruled on the motion, provided a summary of its reasoning, and indicated that a written order would follow.  ECF No. 266.

For the reasons and on the terms set forth below, the motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

1.  Plaintiff Scarlet Honolulu, Inc., alleges that the Commission violated its equal protection rights by, among other things, conducting a disproportionately high number of inspections of its business.  Scarlet alleges that these disproportionate inspections are the result of bias against the LGBTQ+ community, which Scarlet serves.

One of the ways in which Scarlet seeks to prove its equal protection claim is through statistical evidence.  Scarlet seeks to use the Commission's own daily activity reports—data compiled by the Commission and produced to Scarlet in discovery—to show that LGBTQ+ licensees are inspected at higher rates than other liquor licensees.  Scarlet's exhibits, which it provided both to the Court and the Commission before trial, include several demonstrative exhibits that consist of summary charts aggregating the data in the voluminous daily activity reports.  The Commission has prepared competing summary charts that it intends to use in its own defense case.

The subject of this statistical data has come up at least twice before in these proceedings.  At the summary judgment stage, the Commission argued that it should be granted judgment as a matter of law on Scarlet's equal protection claim because Scarlet failed to notice an expert who could explain the statistical significance of the compilations of data.  Scarlet did not dispute that it lacked a witness who could perform that role, but it argued that the significance of the data was plain and a matter of simple

arithmetic.  In denying summary judgment, the Court agreed with Scarlet, reasoning that Scarlet had at least raised a genuine dispute of material fact as to whether the Commission's daily activity reports "show[] a disparity in inspection rates—a discrepancy that can be deduced using rudimentary mathematical calculations."  ECF No. 132, at PageID.2983 n.18.

More recently, the Commission filed a motion *in limine*—Defendant's Motion *in Limine* No. 2, ECF No. 169—in which it argued that Scarlet should be precluded from offering evidence of statistical data, again because Scarlet had not noticed an expert to evaluate the data.  The Court reserved ruling on this motion, explaining that "the Court will be better positioned to evaluate" the Commission's arguments against the admissibility of the data "after hearing the evidence."  ECF No. 247, at PageID.8114.

2.  Trial began on Monday, September 30, 2024, and Plaintiffs have confronted several witnesses with statistical data.  Moreover, the Court also has had an opportunity to review Plaintiffs' demonstrative exhibits, which are a series of charts compiling the number of inspections conducted

at different locations at different times, and which Plaintiffs provided to the Court and the Commission in advance of trial.

In open court on Thursday, October 3, 2024, Plaintiffs' counsel stated that Baldwin would be called to testify on his "individual review of every single page that has been produced" in the daily activity reports, as well as "his analysis of the rankings, his review of defense counsel's demonstrative exhibits, and these are all based on his personal page-by-page review of these documents." Tr. 4-14 (Oct. 3, 2024). Plaintiffs' counsel further explained that Baldwin has "been involved from the very beginning of this case." *Id.*

That representation prompted the Commission to file the current motion. In its motion, the Commission seeks to preclude Baldwin from "mak[ing] arguments – from the witness stand – about the data (or certain subsets of the data) and what it means." ECF No. 263, at PageID.8443. The Commission argues that this "would be expert testimony, which the plaintiffs are not entitled to present because they never identified any expert to testify in this case." *Id.* Furthermore, the Commission notes that

5

Plaintiffs' initial disclosures (served January 3, 2022) and supplemental disclosures (served April 28, 2023) make no mention of Baldwin "as a witness to anything related to this case." *Id.* at PageID.8445.

## DISCUSSION

In their opposition to the Commission's motion, Plaintiffs explain that they intend to call Baldwin to testify on three matters: (1) his review of the Commission's daily activity reports and his assistance in the preparation of demonstrative summaries, including "the process by which the information contained on those documents was compiled into spreadsheet formats"; (2) the rate of Commission inspections "as an average among licensee groups"; and (3) "the probabilities that the number of inspections of LGBTQ licensees among licensee comparator groups were random, based on arithmetical calculations that involve only simple multiplication." ECF No. 264, at PageID.8486.

    1. Plaintiffs concede that Baldwin has not been noticed as an expert. But they argue that his proposed testimony may be admitted as lay opinion testimony.

6

A court may admit lay opinion testimony only where it is (1) "rationally based on the perception of the witness" and (2) "helpful to the jury in acquiring a 'clear understanding of the witness' testimony or the determination of a fact in issue.'" *United States v. Simas*, 937 F.2d 459, 464 (9th Cir. 1991) (quoting Fed. R. Evid. 701). And opinions are "rationally based on the witness's perception," Fed. R. Evid. 701, only when the observations are "common enough" to require a "limited amount of expertise." *United States v. VonWillie*, 59 F.3d 922, 929 (9th Cir. 1995). In *VonWillie*, for example, the Ninth Circuit found it a sufficiently commonsense observation for a police officer to testify, as a lay witness, about the "nexus between drug trafficking and the possession of weapons." *Id.* By contrast, the Ninth Circuit in *United States v. Figueroa-Lopez*, 125 F.3d 1241, 1244-46 (9th Cir. 1997), explained that special agents' observations of whether the defendant's actions "were consistent with those of an experienced narcotics trafficker" required specialized knowledge and therefore could only come from a qualified expert witness.

7

In this case, the first two subjects of Baldwin's proposed testimony fit comfortably within the category of lay opinion testimony. Baldwin's review of the Commission's data and his assistance with the preparation of demonstrative exhibits are the sort of matters that fall within the ordinary commonsense experience of a layperson. This testimony should amount to no more than explaining how Baldwin carefully reviewed the data, helped to compile it into spreadsheets, and assured himself that those spreadsheets were accurate. It also includes his calculation of the average percentage difference between inspections of LGBTQ+ licensees and non-LGBTQ+ licensees that appear within Plaintiffs' demonstrative exhibits: for example, that if there are three inspections of the former and two of the latter, the former would have been inspected at 150 percent the rate of the latter. These are matters "common enough" to require a "limited amount of expertise." *VonWillie*, 59 F.3d at 929.

The third subject matter of John Baldwin's proposed testimony, however, is different from the first two. Here, Plaintiffs propose to have Baldwin testify about "the probabilities that the number of inspections of

LGBTQ licensees among licensee comparator groups were random, based on arithmetical calculations that involve only simple multiplication." ECF No. 264, at PageID.8486.  Plaintiffs contend that these too are lay opinions because "calculations as to probability" involve "only a series of multiplications by 50%."  *Id.* at PageID.8488.  But it is not the complexity of the math at hand, but rather the judgments required to select the mathematical equations to use, that require specialized knowledge.  *See Shea v. Kerry*, 961 F. Supp. 2d 17, 49-51 (D.D.C. 2013) ("Certainly, a big part of what most statisticians do boils down to simple math.  But statisticians . . . are experts because they know which numbers to use, and what functions to apply to each set of numbers.  In this case, the relevant expertise is not simply applying elementary school-level math to sets of numbers found within the defendant's documents. . . .  It is being able to explain whether a disparity . . . is statistically significant, and whether the results have accounted for 'noise' that may skew the numbers.").  Put differently, only an expert—one qualified to use specialized knowledge—can explain why John Baldwin's chosen formula for assessing the probabilities that any

disparities would arise is an appropriate one. And because Plaintiffs chose not to notice Baldwin as an expert, they may not now call him to offer an opinion that only an expert can offer.

 Accordingly, as far as the Federal Rules of Evidence are concerned, John Baldwin may testify about his review of Commission data and preparation of the charts (and basic math) found in Plaintiffs' demonstrative exhibits as a lay witness under Rule 701. But Baldwin may not testify as to his judgment about the probabilities that disparities in the data would arise, for that would require the testimony of an expert under Rule 702, and Baldwin has not been designated as one.

 2. The Commission's motion also relies on Federal Rule of Civil Procedure 26(a)(1)(A)(i), which requires that parties provide "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses." This requirement applies to all witnesses, whether lay or expert. And according to the Commission, Plaintiffs have violated Rule 26(a)

because they did not include Baldwin in their initial or supplemental disclosures.

In their opposition to the Commission's motion, Plaintiffs nowhere suggest that they made adequate Rule 26(a) disclosures of Baldwin's statistical testimony while discovery remained open.  At the hearing on the Commission's motion, Plaintiffs once again declined to represent that they ever adequately disclosed Baldwin's statistical testimony for Rule 26(a) purposes.  And that is unsurprising, for the procedural history of this case points in the opposite direction:  at both the summary judgment stage and again in response to the Commission's second motion *in limine*, Plaintiffs argued for the admissibility of their statistical evidence without ever mentioning that Baldwin would be called to backstop that evidence.

The failure to disclose Baldwin's testimony is all the more significant because as Plaintiffs themselves have said, Baldwin has "been involved from the very beginning of this case."  Tr. 4-14 (Oct. 3, 2024).  Indeed, as Plaintiffs note in their opposition, Baldwin has dedicated "over 100 hours to his review."  ECF No. 264, at PageID.8485.  At the hearing on the

11

Commission's motion, Plaintiffs' counsel acknowledged being aware of Baldwin's work while the discovery period was still open. Yet Plaintiffs have offered no meaningful excuse for failing to disclose Baldwin's name and expected statistical testimony at an earlier stage.

Nonetheless, a "district court has wide discretion in controlling discovery and that discretion is particularly wide in deciding whether to exclude witnesses." *V5 Techs. v. Switch, Ltd.*, 334 F.R.D. 615, 617 (D. Nev. 2020) (cleaned up). Courts "do not construe the duty to provide witness disclosures in a manner that puts form over substance," and the key question under Rule 26(a) is whether the opposing party has been "put on notice of the factual and legal contentions of the opposing party." *Id.* Accordingly, the Court will examine each aspect of Baldwin's proposed testimony to determine whether any have been adequately disclosed, or whether any failure to disclose is harmless or substantially justified. *See* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) . . . , the party is not allowed to use that

information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless.").

As to Baldwin's proposed testimony about statistical probabilities—which the Court has already precluded on the ground that it does not constitute proper lay opinion testimony—the Court agrees with the Commission that it also would be inappropriate to allow Baldwin to offer that testimony given the failure to disclose it under Rule 26(a). Nothing in Plaintiffs' submissions during the discovery process would have clued in the Commission to the fact that Plaintiffs intended to call Baldwin for these purposes. And even if Baldwin had "been identified at some point during the course of discovery," it would not "obviate the parties' affirmative obligations to identify the witnesses on whom they expect to rely." *Palmer v. Cognizant Tech. Sols. Corp.*, No. CV 17-6848, 2023 WL 4155400, at *2 (C.D. Cal. May 16, 2023) (precluding plaintiff from calling nine undisclosed witnesses to testify at trial). Moreover, the Commission represents that because Plaintiffs did not notice an expert for statistical probabilities, it did not do so either. Allowing this aspect of Baldwin's testimony, under these

13

circumstances, would be neither justified nor harmless. *Qin Li v. City & County of Honolulu*, Civil No. 14-00573, 2017 WL 11483455, at *4 (D. Haw. Nov. 20, 2017) (granting motion to preclude plaintiff from calling four undisclosed witnesses because plaintiff "has not demonstrated any justification for her failure to disclose the witnesses in her initial disclosures or otherwise prior to the close of discovery or the final pretrial conference," and the failure to do so was not harmless because it was "too late to reopen discovery without the unnecessary delay of the jury trial").

The Court reaches a different conclusion, however, as to the first two subjects of Baldwin's proposed testimony—the subjects the Court believes are suitable for lay opinion testimony. For some time now, Plaintiffs have indicated that they would offer basic summary data about the number of inspections of LGBTQ+ and non-LGBTQ+ licensees. Plaintiffs provided their demonstrative exhibits to the Court and the Commission in advance of trial. Those demonstratives include the basic compilations of data for which Plaintiffs now wish to call Baldwin. Although Plaintiffs did not specifically identify Baldwin as the witness who would confirm the

14

accuracy of those demonstratives, the Court is satisfied that the Commission is not meaningfully prejudiced by the more recent identification of Baldwin as the witness who would serve those purposes. As the Commission's counsel acknowledged at the hearing on this motion, it has been preparing to challenge the accuracy of those demonstratives since it received them before trial began.  Recognizing the need to apply Rule 26(a) in a manner that respects substance rather than form, the Court concludes that it is appropriate to allow Baldwin to testify that Plaintiffs' demonstratives are accurate.

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Defendant's motion.

IT IS SO ORDERED.

DATED:  October 8, 2024, at Honolulu, Hawai'i.



/s/ Micah W.J. Smith

Micah W.J. Smith
United States District Judge

Civil No. 21-cv-00457 MWJS-KJM, *Scarlet Honolulu, Inc.* et al. *v. Honolulu Liquor Commission*; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO PRECLUDE TESTIMONY OF JOHN BALDWIN